No. 26-1081

In the United States Court of Appeals
for the First Circuit

———————•———————

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO
RICO, as representative of THE COMMONWEALTH OF PUERTO RICO; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, As
Representative for the Employees Retirement System of the
Government of the Commonwealth of Puerto Rico; THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, As
Representative for the Puerto Rico Highways and Transportation
Authority; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, As Representative for the Puerto Rico Electric Power
Authority (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, As Representative of the Puerto Rico Public
Buildings Authority,

*Debtors.*

*(For Continuation of Caption See Inside Cover)*

———————————————————

On Appeal from the United States District Court
for the District of Puerto Rico
Adv. Proc. No. 25-00043-LTS; Case Nos. 17-BK-3283-LTS; 17-BK-4780-
LTS, Laura Taylor Swain, District Judge

**OPENING BRIEF OF APPELLANTS LUMA ENERGY, LLC, AND
LUMA ENERGY SERVCO, LLC**

LUMA ENERGY, LLC; LUMA ENERGY SERVCO, LLC,

*Plaintiff-Appellants*

v.

PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); PUERTO RICO PUBLIC-PRIVATE PARTNERSHIPS AUTHORITY,

*Defendant-Appellees*

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA),

*Debtor-Appellee,*

PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY, AS AGENT FOR PUERTO RICO PUBLIC-PRIVATE PARTNERSHIPS AUTHORITY,

*Interested Party-Appellee.*

---

David Horniak (Bar No. 1187585)
**DLA PIPER LLP (US)**
500 8th Street, NW
Washington, DC 20004
T: (202) 799-4361
F: (202) 799-4362
david.horniak@us.dlapiper.com

Brett Ingerman (Bar No. 1220681)
Dale K. Cathell (Bar No. 1143481)
**DLA PIPER LLP (US)**
650 S. Exeter Street, Ste. 1100
Baltimore, MD 21202-4576
T: (410) 580.4177
brett.ingerman@us.dlapiper.com
dale.cathell@us.dlapiper.com

Mariana Muñiz Lara (Bar No. 1172817)
**DLA PIPER (PUERTO RICO) LLC**
B7 Tabonuco Street, Ste. 1501
Guaynabo, Puerto Rico 00968-3349
T: (787) 945.9106
Mariana.muniz@us.dlapiper.com

*Counsel for Appellants LUMA Energy, LLC, and LUMA Energy Servco, LLC*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for Appellants LUMA Energy, LLC, and LUMA Energy Servco, LLC (collectively, "LUMA") state as follows:

1. LUMA Energy Servco, LLC is wholly owned by LUMA Energy, LLC.

2. LUMA Energy, LLC's corporate parents are Quanta Utility Operations, LLC, and 2240385 Alberta Ltd.

May 11, 2026                          Respectfully submitted,

*/s/ David M. Horniak*
David Horniak
**DLA PIPER LLP (US)**
500 8th Street, NW
Washington, DC 20004
T: (202) 799-4361
F: (202) 799-4362
david.horniak@us.dlapiper.com

*Counsel for Appellant*

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................... iii

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD .............vii

INTRODUCTION.................................................................................1

STATEMENT OF JURISDICTION .......................................................6

STATEMENT OF THE ISSUES............................................................6

STATEMENT OF THE CASE ...............................................................7

    A.    Factual Background. .....................................................................7

        1.  The OMA .................................................................................7

        2.  Dispute Resolution under the OMA. ........................................10

        3.  The Purported "Technical Disputes" .......................................11

    B.    Procedural History. .....................................................................15

STANDARD OF REVIEW....................................................................20

SUMMARY OF ARGUMENT ...............................................................20

ARGUMENT ......................................................................................23

I.   The Title III Court failed to consider case law advising against abstention in "core" proceedings. ..........................................................27

II.   The Title III Court abused its discretion by giving too much weight to the predominance of Puerto Rico law issues that are not novel or complex.........................................................................................33

III.   The Title III Court erred in relying on alleged forum shopping...34

IV.   The Title III Court failed to apprehend how this case will affect the efficient administration of PREPA's estate....................................37

V.   The Title III Court abused its discretion by giving too much weight to the potential burden on its docket..........................................40

VI.   The Title III Court failed to consider other relevant factors. .......41

VII.   Considering all of these errors together, the Title III Court abused its discretion...........................................................................42

CONCLUSION ...................................................................................44

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Agri-Concrete Prods. v. Fabcor, Inc. (In re Agri-Concrete
    Prods., Inc.),*
    153 B.R. 673 (Bankr. M.D. Pa. 1993) ................................ 28

*Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works,
    Inc.),*
    815 F.2d 165 (1st Cir. 1987) ....................................... passim

*Asociación de Salud Primaria de Puerto Rico v.
    Commonwealth (In re Fin. Oversight & Mgmt. Bd.),*
    330 F. Supp. 3d 667 (D.P.R. 2018).............................. 18, 25

*Ben Cooper, Inc. v. Insurance Co. of State of Penn. (In re Ben
    Cooper, Inc.),*
    896 F.2d 1394 (2d Cir. 1990) ..................................... 28, 30

*Blackjewel Liquidation Tr. v. Kopper Glo Mining, LLC (In re
    Blackjewel LLC),*
    Adv. No. 22-3001, 2022 WL 17184810 (Bankr. S.D. W. Va.
    Nov. 23, 2022) ......................................................... 29

*Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.,*
    6 F.3d 1184 (7th Cir. 1993)............................................ 34

*Colarusso v. Ragosa (In re Colarusso),*
    382 F.3d 51 (1st Cir. 2004) ........................................ 20, 42

*Continental Nat'l Bank v. Sanchez (In re Toledo),*
    170 F.3d 1340 (11th Cir. 1999)........................................ 32

*Dalmau v. P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.),*
    Adv. Proc. No. 21-0059-LTS, 2022 WL 17413011 (D.P.R.
    Feb. 7, 2022)............................................................. 30

*Ellwood City Iron & Wire Co. v. Flakt, Inc., Env't Sys. Div.
    (In re Ellwood City Iron & Wire Co.),*
    59 B.R. 53 (Bankr. W.D. Pa. 1986)................................... 37

iii

*Fin. Oversight & Mgmt. Bd. for P.R. v. U.S. Bank N.A. (In re Fin. Oversight & Mgmt. Bd. for P.R.),*
121 F.4th 280 (1st Cir. 2024)..............................................................22

*Flores Rivera v. Telemundo Grp.,*
133 B.R. 674 (D.P.R. 1991) ...............................................................33

*Forest Grove Sch. Dist. v. T. A.,*
557 U.S. 230 (2009)...........................................................................26

*Franklin Computer Corp. v. Harry Strauss & Sons, Inc. (In re Franklin Computer Corp.),*
50 B.R. 620 (Bankr. E.D. Pa. 1985)...................................................28

*González-Oyarzun v. Caribbean City Builders, Inc.,*
798 F.3d 26 (1st Cir. 2015) ...............................................................41

*Gupta v. Quincy Med. Ctr.,*
858 F.3d 657 (1st Cir. 2017) .............................................................31

*HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Ass'ns,*
594 U.S. 382 (2021)...........................................................................26

*Lipshie v. AM Cable TV Indus. (In re Geauga Trenching Corp.),*
110 B.R. 638 (Bankr. E.D.N.Y. 1990)...............................................29

*Mec Steel Bldgs. v. San Lorenzo Contr. Grp. (In re Mec Steel Bldgs., Inc.),*
136 B.R. 606 (Bankr. D.P.R. 1992)....................................................33

*Mercury Masonry Corp. v. Terminal Constr. Corp. (In re Mercury Masonry Corp.),*
114 B.R. 35 (Bankr. S.D.N.Y. 1990) ..................................................37

*N. Parent, Inc. v. Commer & Co. (In re N. Parent, Inc.),*
221 B.R. 609 (Bankr. D. Mass. 1998) ................................................36

*In re New Eng. Compounding Pharm. Prods. Liab. Litig.,*
496 B.R. 256 (D. Mass. 2013)............................................................25

iv

*Pettus Props., Inc. v. VFC Partners 8, LLC (In re Pettus Props., Inc.)*,
Adversary No. 11-3213, 2012 WL 956915 (Bankr. W.D.N.C. Mar. 20, 2012) ....................................................... 29

*Steinburg v. Esposito (In re Pioneer Dev. Corp.)*,
47 B.R. 624 (Bankr. N.D. Ill. 1985) .............................................. 28, 43

*Thompson v. Magnolia Petroleum Co.*,
309 U.S. 478, 483 (1940) ................................................................. 34

*United States v. Gelin*,
712 F.3d 612 (1st Cir. 2013) ........................................................... 20

*United States v. Nguyen*,
542 F.3d 275, 281 (1st Cir. 2008) .................................................. 20

*United States v. Santana-Avilés*,
120 F.4th 7 (1st Cir. 2024)............................................. 20, 32, 34, 43

*Wheeling-Pittsburgh Steel Corp. v. Blue Cross and Blue Shield of W. Va., Inc. (In re Wheeling-Pittsburgh Steel Corp.)*,
108 B.R. 82 (Bankr. W.D. Pa. 1989)................................................ 37

## Statutes

28 U.S.C § 157 ............................................................................. 30, 31

28 U.S.C. § 1291 ................................................................................. 6

28 U.S.C. § 1334 ......................................................................... *passim*

48 U.S.C. § 2161 ............................................................................... 22

48 U.S.C. § 2166 ................................................................................. 6

48 U.S.C. § 2169 ......................................................................... *passim*

PR Laws Ann. Tit. 22 §§ 191–218......................................................... 7

PR Laws Ann. Tit. 22 §§ 1051–1056..................................................... 8

PR Laws Ann. Tit. 22 §§ 1111–1125 .........................................................8

PR Laws Ann. Tit. 27 §§ 2601–2623 .........................................................9

**Other Authorities**

Fed. R. App. P. 4 .........................................................................................6

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Oral argument should be heard because the appeal involves an important issue regarding the abstention analysis under Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") section 309, 48 U.S.C. § 2169.  To our knowledge, this Court has never opined on that issue. The decisions squarely addressing PROMESA abstention have issued from the Title III Court in the District of Puerto Rico, which applies the same factors bankruptcy courts apply when considering abstention under 28 U.S.C. § 1334(c)(1). However, there are material differences between the language of that statute and PROMESA section 309. Since no hearing was conducted in the lower court, oral argument will likely assist the Court's review of the record.

## INTRODUCTION

The Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement dated June 22, 2020 (as amended and supplemented, the "OMA") is a critical post-petition executory contract between LUMA,[1] the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public-Private Partnerships Authority ("P3A"). It is property of the Title III debtor, PREPA, that lays out exactly how LUMA will operate the transmission and distribution ("T&D") system for PREPA's benefit, and ultimately the benefit of the Commonwealth and its citizens.

In recent years, certain parts of the Government of Puerto Rico (the "Government") have sought to undermine and undo the OMA. In July 2025, the Government, via P3A, took its first steps towards undoing the OMA by raising six disputes with LUMA, via an 81-page "Notice of Dispute." The disputes are an attempt by the Government to unfairly blame LUMA for the shortcomings of the T&D system that long pre-date LUMA's involvement. Indeed, it has been well-documented that before

---

[1] LUMA refers collectively to LUMA Energy, LLC and LUMA Energy Servco, LLC.

LUMA came along, the T&D system was "falling apart quite literally"[2] due to PREPA's mismanagement.

The Government has repeatedly and publicly stated that its objective in initiating these disputes is not to obtain their fair resolution, but simply to establish a pretext to terminate the OMA. Just after her election, Governor Jenniffer González Colón clarified, "I am talking about the fact that we are going to end the LUMA contract."[3] But terminating the OMA right now would have enormous and wide-reaching repercussions for PREPA's Title III restructuring. To LUMA's knowledge, there is no white-knight private operator waiting in the wings to replace LUMA and maintain and operate the T&D system. *See* App. 618–19. The only alternative would be for the Government to resume operating the system, which, as the Financial Oversight Board and Management Board for Puerto Rico ("Oversight Board") recently

---

[2] Expert Report of Jeremy I. Fisher, PhD and Ariel I. Horowitz PhD at p. 18, *available* at https://energia.pr.gov/wp-content/uploads/sites/7/2016/11/Expert-Report-Revenue-Requirements-Fisher-and-Horowitz-Revised-20161123.pdf.

[3] *See* San Juan Daily Star, *Governor-elect forms task force to weigh energy options, tackle end of LUMA contract, available at* https://www.sanjuandailystar.com/post/governor-elect-forms-task-force-to-weigh-energy-options-tackle-end-of-luma-contract (dated Dec. 16, 2024).

noted, would violate Puerto Rico law and result in reversion of management to the very entity that created the problems in the first place.

To effectuate its plan to terminate the OMA, P3A has unilaterally declared that all of the disputes in its Notice of Dispute qualify as "Technical Disputes" under the OMA, as opposed to just "Disputes." This distinction is crucial, because different dispute-resolution procedures apply to different types of disputes. "Technical Disputes" must be adjudicated in a confidential, expedited proceeding by a technical expert whose decision is final, binding, and non-appealable. Disputes other than Technical Disputes follow a more traditional path of mediation and litigation in court, where the proceedings are public, other creditors can participate, and decisions can be appealed. In other words, P3A wants to ram these disputes through the "Technical Dispute" process to prevent public scrutiny and avoid meaningful and fair consideration of the issues. LUMA disagrees that these disputes are "Technical Disputes" and believes they should be heard and decided in public, before the Title III Court.

This disagreement over what type of disputes exist is itself a

3

"Dispute" under the OMA's dispute resolution clause (the "Threshold Dispute"). It must be adjudicated in the same way as any other Dispute before adjudication of the six categories of dispute raised by P3A in its Notice of Dispute. Once the Threshold Dispute is resolved and the six disputes are identified as either Technical Disputes or Disputes, then the parties may proceed under whichever resolution path is appropriate. P3A and PREPA agreed with this position—they even said so in writing. But they have nonetheless refused to follow the OMA's dispute resolution process and mediate the Threshold Dispute, as required by the OMA. Instead, they have stated that they plan to move forward with unilaterally initiating the dispute-resolution procedures for Technical Disputes with the ICC International Centre for ADR (the "ICC"), notwithstanding LUMA's objection to the process.

Failing to resolve the Threshold Dispute before continuing down either dispute resolution process is a clear breach of the OMA by PREPA and P3A. Indeed, they have already breached Article 15 by refusing to mediate the Threshold Dispute. LUMA faces a Hobson's choice. If LUMA refuses to participate in the Technical Dispute process initiated by P3A, then it risks losing the opportunity to defend itself on the merits

4

if the Court later determines that one or more of the disputes considered by the technical expert were, in fact, Technical Disputes. But if LUMA participates in the Technical Dispute process, then it risks waiving its challenge to that process and forfeiting its day in court.

Given that PREPA and P3A insisted on seeking appointment of a technical expert to proceed with the Technical Dispute process over LUMA's objection to that process, LUMA was forced to file an adversary proceeding and motion for provisional relief with the Title III Court. At the court's request, P3A agreed to stay the resolution processes while the parties briefed whether the Title III Court had jurisdiction to hear the Threshold Dispute. The Oversight Board supported LUMA's position that the Title III Court should hear this case and opposed abstention. App. 574–599. Nonetheless, the Title III Court chose to abstain from hearing the Threshold Dispute under PROMESA section 309 and dismissed LUMA's action.

The Title III Court abused its discretion in abstaining. It reasoned that it should follow the same abstention factors bankruptcy courts apply when evaluating abstention under 28 U.S.C. § 1334(c)(1), but failed to appreciate or consider how the differences between that statute and

PROMESA section 309 affect the analysis. It failed to consider certain important factors, such as the fact that this would qualify as a "core" proceeding in bankruptcy court, and it erred in how it analyzed certain other factors, such as the predominance of Puerto Rico law issues and P3A's allegations of forum-shopping. Congress made clear when it enacted PROMESA section 309 that comity to Puerto Rico local courts should ***not*** be a basis for abstention. By emphasizing the local-law nature of the dispute and the availability of a local forum, the Title III Court effectively inserted into PROMESA section 309 language that Congress intentionally omitted. The decision should be reversed.

## STATEMENT OF JURISDICTION

The Title III Court had subject-matter jurisdiction under 48 U.S.C. § 2166(a) and (b). The Title III Court issued its final judgment on December 19, 2025. Add. 1–25. Appellants timely noticed their appeal on January 15, 2026. App. 626; *see also* Fed. R. App. P. 4(a). This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 48 U.S.C. § 2166(e).

## STATEMENT OF THE ISSUES

LUMA filed its action in the Title III Court because of its importance to PREPA's title III case. Did the Title III Court err when it

6

abstained from hearing this action?

## STATEMENT OF THE CASE

### A.    Factual Background.

#### 1.    The OMA

PREPA is a public corporation and instrumentality of the Government of Puerto Rico created by Act No. 83 of May 2, 1941, also known as the *Puerto Rico Electric Power Authority Act*, PR Laws Ann. Tit. 22 §§ 191-218 (2025) ("Act 83"). PREPA owns an extensive transmission and distribution system with approximately 2,600 miles of transmission and sub-transmission lines (230 kV/115 kV/38 kV), more than 16,000 miles of primary voltage distribution lines (13kV, 8kV, 4kV), and roughly 400 utility-owned substations.

For decades, PREPA faced operational, strategic, and financial challenges, allegations of systemic corruption, a deficient energy infrastructure, an aging and deteriorating transmission and distribution system, high and volatile fuel prices, high vulnerability to weather conditions, an underfunded pension system, and an eventual loss of access to capital markets. PREPA also regulated itself, approved its own

7

rates without independent oversight, and was a vertically integrated monopoly.

On May 27, 2014, the Legislative Assembly of Puerto Rico enacted the *Puerto Rico Energy Transformation and RELIEF Act*, Act No. 57-2014, PR Laws Ann. Tit. 22 §§ 1051-1056 (2025) ("Act 57"). Act 57 provides the legal and regulatory framework to enforce a thorough reform of the energy sector that promotes the operation and administration of an efficient system at just and reasonable costs. It also created a separate and independent regulator, the PREB, and delegated to it, among other powers, the evaluation and approval of rates.

On July 2, 2017, the Oversight Board filed a voluntary petition for relief for PREPA under PROMESA section 304(a), commencing PREPA's Title III restructuring.

A complete transformation of the T&D system was needed to bring safe, reliable, and modern electric power services to Puerto Rico and to move Puerto Rico's economy forward. On June 21, 2018, the Legislative Assembly of Puerto Rico enacted the *Puerto Rico Electric Power System Transformation Act,* Act No. 120-2018, PR Laws Ann. Tit. 22 §§ 1111–1125 (2025) ("Act 120"), which establishes the legal framework for the

8

sale, disposition, and/or transfer of the assets, operations, functions, and services of PREPA, including a transaction under which operations of the T&D system would be assumed by a private manager for a period of time, with ownership remaining at PREPA.

Act 120 also established necessary safeguards to ensure a fair and transparent process for obtaining bids for the private operation and management of the T&D system. Act 120 also provided for the applicability of the *Public-Private Partnership Authority Act,* Act No. 29-2009, PR Laws Ann. Tit. 27 §§ 2601–2623 (2025) ("Act 29"), and empowered the P3A to begin the processes related to informal negotiations, market analysis, requests for information, and any other method to collect information for PREPA's transformation.

Act 120 designated P3A as the government entity responsible for the functions, services, and facilities of public-private partnerships in the electric sector. Working in collaboration with the Oversight Board, on June 5, 2018, P3A launched a competitive process to award a long-term contract to a qualified operation and maintenance service provider for the T&D system. After a competitive and transparent bidding process,

9

LUMA was selected as the winning bidder based on its experience, qualifications, and terms of its proposal.

On June 22, 2020, the Board of Directors of P3A, the PREPA Governing Board, and the Governor of Puerto Rico approved the OMA among PREPA, LUMA, and P3A pursuant to the procedures set forth in Act 29. The OMA provides for LUMA to assume the operation and management of PREPA's T&D system, while PREPA retains ownership of the T&D assets, and P3A administers the relationship. App. 55–390.

### 2.   Dispute Resolution under the OMA.

Article 15 of the OMA is titled "Dispute Resolution." App. 190. Section 15.1 defines the broad scope of Article 15. It states that "any dispute among the Parties arising out of, relating to or in connection with this Agreement or the existence, interpretation, breach, termination or validity thereof (a 'Dispute') shall be resolved in accordance with the procedures set forth in this Article 15 (Dispute Resolution), which shall constitute the sole and exclusive procedures for the resolution of such Disputes." *Id.*

Article 15 provides two paths to resolve disputes depending on the type of dispute. The process begins the same way for both types: with a

10

Notice of Dispute under Section 15.2(a), followed by good-faith negotiations between "Designated Persons" from the parties. *Id.* If, after 30 days, negotiations prove unsuccessful, then the paths diverge. "Technical Disputes" go one way and all other "Disputes" go another. App. 190–91. Technical Disputes go to the ICC and are heard by an "Independent Expert" who "is not an arbitrator" and whose decision, which is required in 60 days, is "final and binding." App. 191–92 (OMA § 15.4). The process is strictly confidential. App. 192. All other Disputes that are not Technical Disputes go to mediation and then to litigation in a public, appealable court proceeding if they cannot be resolved. App. 192–94. (OMA §§ 15.5–15.7)

A disagreement about the classification of any dispute is itself a "Dispute." App. 190. That includes the Threshold Dispute between the parties that is at issue in this action.

### 3.    The Purported "Technical Disputes"

On July 22, 2025, P3A, as administrator for PREPA, notified LUMA by letter of six purported "Technical Disputes." App. 392–472. LUMA contends that none of these disputes qualify as Technical Disputes as that term is defined in the OMA. A summary is below.

| Dispute No. | Description | Brief Summary of Defendants' Allegations |
|---|---|---|
| 1 | Federal Funds | Defendants allege that LUMA has failed to comply with federal funding obligations, delayed securing reimbursements, reconciling accounts, and providing required documentation for federally funded projects. |
| 2 | Insufficient Revenue | Defendants allege that LUMA has failed to generate sufficient revenues, obtain federal reimbursements, and manage service account funding, resulting in liquidity crises for PREPA. |
| 3 | April 16, 2025 Blackout | Defendants allege that LUMA failed to comply with its contractual obligations following the island-wide blackout of April 16, 2025. Although not stated explicitly, they imply a failure to meet reporting requirements under Article 5. It appears Defendants may also be alleging a failure of vegetation management. |
| 4 | Vegetation Management | Defendants allege that LUMA has failed to appropriately manage vegetation, failed to address certain high voltage lines, failed to inspect certain assets in advance of the hurricane season, and failed to adequately maintain and plan for public lighting. |
| 5 | Financial Statements/Audits | Defendants allege that LUMA failed to comply with certain audit and financial reporting obligations. |
| 6 | Pole Fees | Defendants allege that LUMA failed to collect certain pole attachment fees from third-party telecommunications and cable entities. |

By letter dated July 25, 2025, LUMA disputed P3A's allegations and stated its position that none of these disputes fall under the definition of Technical Dispute in the OMA, meaning they must be resolved via the Dispute—not Technical Dispute—resolution process. App. 474–76. LUMA further notified Defendants to consider its letter a "Notice of Dispute" as to this threshold issue of how each dispute should be classified under the OMA. App. 475.

Following LUMA's July 25, 2025 letter, P3A responded on August 2, 2025. App. 478–480. It reasserted Defendants' position that the disputes are all "Technical Disputes." Notably, the letter also admitted that the definition of "Dispute" under the OMA is broad and encompasses "any dispute among the parties arising out of, relating to or in connection with" that agreement—such as the Threshold Dispute. App. 478.

Thereafter, the parties' designated representatives met and discussed both the Threshold Dispute and the substance of Defendants' allegations as required by Section 15.3 of the OMA. No issues were resolved.

On August 15, 2025, P3A sent another letter. App. 482–84. Consistent with the assertion in its August 2, 2025 letter, P3A admitted

13

that "any disagreement over classification"—i.e., whether a disagreement is a Dispute or Technical Dispute—"is itself a 'Dispute' subject to the same process." App. 483. That, of course, is correct. The Threshold Dispute is a Dispute subject to mediation and litigation under Sections 15.5 and 15.6 of the T&D OMA. App. 192–94.

Accordingly, on August 15, 2025, LUMA demanded mediation with respect to the Threshold Dispute. App. 486. On August 20, 2025, P3A sent a letter in which it refused to participate in mediation of the Threshold Dispute. App. 488. Instead, it simply reiterated that all of the issues raised in Defendants' July 22, 2025 Notice of Dispute are Technical Disputes, and stated that it intends to proceed to seek appointment of an Independent Expert[4] under the rules of the ICC International Center for ADR under Section 15.4(b)(i) of the OMA, without first resolving the Threshold Dispute. App. 488–490.

Subsequently, on August 22, 2025, P3A sent yet another letter to LUMA insisting on the Technical Dispute process and presenting a

---

[4] The OMA describes "Independent Expert" as "a reputable Person or Persons possessing expert knowledge and experience for the Expert Technical Determination of the Technical Dispute in question and shall be independent of and impartial as among the Parties." App. 191.

14

schedule for selection and designation of Independent Expert candidates. App. P3A threatened that after ten days, if the parties had not mutually agreed on an Independent Expert (which would obviously be the case, as LUMA disagreed that the matter should be heard by an Independent Expert), P3A would "proceed . . . immediately" to seek to appoint an Independent Expert over LUMA's objection. P3A once again refused to first resolve the Threshold Dispute before pursuing that process.

### B.    Procedural History.

P3A's refusal to mediate the Threshold Dispute and its threat to unilaterally pursue the Technical Dispute process forced LUMA to act. On August 25, 2025, LUMA filed an adversary proceeding against P3A and PREPA in the Title III Court. LUMA asserted three claims: (1) breach of Article 15 of the OMA based on the Defendants' refusal to participate in mediation of the Threshold Dispute; (2) request for a declaratory judgment that the Threshold Dispute is a "Dispute" subject to the procedures set forth in sections 15.5 and 15.6 of the OMA; and (3) request for a declaratory judgment that the six issues raised in P3A's July 22, 2025 letter are "Disputes" subject to the procedures set forth in sections 15.5 and 15.6 of the OMA. App. 31–35. LUMA also filed a motion

to preliminarily enjoin P3A and PREPA from initiating or continuing the Technical Dispute resolution process until resolution of the Threshold Dispute and requiring them to mediate pursuant to OMA § 15.5. App. 37.

P3A initially refused to delay its pursuit of the Technical Dispute process, insisting that it would proceed to seek appointment of an Independent Expert even while LUMA's action, and its motion for preliminary injunction, were pending. Ultimately, P3A relented, offering that it would pause the process if the Title III Court bifurcated the briefing on LUMA's motion into "jurisdictional" and "merits" phases, but only for the "jurisdictional" phase.[5] The Title III Court accepted P3A's proposal, bifurcated briefing, and stayed the Technical Dispute process pending briefing and resolution of P3A's objection to the court's jurisdiction. P3A, through its agent AAFAF, then filed its jurisdictional opposition.

P3A's jurisdictional opposition made two principal arguments. First, P3A argued that the Title III Court lacked subject matter jurisdiction for several independent reasons, including (1) the matter was

---

[5] P3A refused to keep the process paused during the merits phase if the Title III Court found it had jurisdiction.

not "arising under" PROMESA or "arising in" or "related to" PREPA's Title III case; (2) the Title III Court could not exercise supplemental jurisdiction over LUMA's declaratory judgment claim; and (3) P3A has sovereign immunity under the Eleventh Amendment. Second, P3A argued that even if the Title III Court had subject matter jurisdiction, it should abstain from the matter under PROMESA section 309. LUMA and the Oversight Board, acting as PREPA's representative in Title III Court, filed replies arguing that the Title III Court has subject matter jurisdiction, P3A does not have sovereign immunity, and that the Title III Court should not abstain.

On December 19, 2025, the Title III Court issued the *Memorandum Order Dismissing Adversary Proceeding and Denying Motion for Provisional Relief*. Add. 1–25. On the issue of subject matter jurisdiction, the Title III Court found it did not have "arising under" or "arising in" jurisdiction, but that it did have "related to" jurisdiction pursuant to section 306(a)(2) of PROMESA. Add. 18. However, the Title III Court chose to abstain from hearing the Threshold Dispute under PROMESA section 309.[6]

---

[6] Because it chose to abstain, the Title III Court did not consider or decide

17

In deciding to abstain, the Title III Court referenced twelve factors "bankruptcy courts in Puerto Rico have looked to in deciding whether to abstain under 28 U.S.C. § 1334(c)(1)":

> (1) [T]he effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the unsettled nature of applicable law[;] (4) a related proceeding in state court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court to be enforced in bankruptcy court; (9) the burden on the bankruptcy docket; (10) the likelihood that the bankruptcy court proceeding involves forum shopping by one of the parties; (11) the right to jury trial; and (12) the presence of non-debtor parties.

Add. 21 (quoting *Asociacion de Salud Primaria de Puerto Rico v. Commonwealth (In re Fin. Oversight & Mgmt. Bd.)*, 330 F. Supp. 3d 667, 682 (D.P.R. 2018)). The Title III Court did not consider any differences between PROMESA section 309 and 28 U.S.C. § 1334(c)(1) when reaching this conclusion. *See* Add. 21.

---

whether P3A has sovereign immunity. Add. 25.

18

In applying the above factors, the Title III Court relied on four of the above factors, which it described as "most relevant." *Id*. First, the Title III Court found the Threshold Dispute only sought "a determination of the proper dispute resolution path . . . as opposed to the merits of the underlying disputes," and that its outcome therefore would not have a material effect on the administration of the Title III case. *Id.* Second, the Court found the Threshold Dispute "requires interpretation of the T&D OMA under Commonwealth law," not interpretation of PROMESA, and therefore that "state law issues predominate." Add. 22. Third, the Title III Court found "there is support for the notion that LUMA may be forum shopping" because OMA section 15.6, "which pertains to litigation under the T&D OMA with respect to non-technical Disputes," authorizes suits in Commonwealth Court, but makes no mention of Title III Court. Add. 23. Fourth, the Title III Court found that abstaining would avoid unnecessary burden because the Threshold Dispute is "a purely state law contract dispute that involves non-debtor parties, LUMA and P3A," and "would only add burden on the Court's docket." Add. 24.

As for the other eight factors, the Title III Court implicitly agreed the lack of a pending state proceeding favored LUMA, but observed that

"no single factor is dispositive, and that "as the sole factor weighing against abstention such factor barely moves the scale overwhelmingly tipped in favor of abstention." *Id.* (cleaned up). The Title III Court did not address the other factors. *See id.*

LUMA timely appealed. *See* App. 625–29.

## STANDARD OF REVIEW

This Court reviews abstention decisions for abuse of discretion. *Colarusso v. Ragosa (In re Colarusso)*, 382 F.3d 51, 57 (1st Cir. 2004). An abuse of discretion occurs when "a relevant factor deserving of significant weight is overlooked," "an improper factor is accorded significant weight," or there is "a palpable error of judgment in calibrating the decisional scales." *United States v. Santana-Avilés*, 120 F.4th 7, 11 (1st Cir. 2024) (quoting *United States v. Nguyen*, 542 F.3d 275, 281 (1st Cir. 2008)).

This Court reviews a trial court's statutory interpretation *de novo*. *United States v. Gelin*, 712 F.3d 612, 617 (1st Cir. 2013).

## SUMMARY OF ARGUMENT

The Title III Court abused its discretion by abstaining from adjudicating LUMA's action. It imported wholesale into its abstention analysis the factors courts consider when abstaining under 28 U.S.C.

20

§ 1334(c)(1), without considering critical differences between that statute and the abstention language in PROMESA section 309.

First, the Title III Court erred by failing to consider well-established First Circuit precedent that disputes concerning a debtor's post-petition contracts are core proceedings, and abstention is "totally unwarranted" in such proceedings. *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165, 171 (1st Cir. 1987). This proceeding plainly qualifies as a "core" proceeding, and the mere fact that Congress did not expressly import the "core" vs. "non-core" concept elsewhere into PROMESA does not mean it is not relevant to the abstention analysis.

Second, the Title III Court gave too much weight to the predominance of Puerto Rico law issues, ignoring that those issues are neither novel nor complex, and that PROMESA section 309 does not instruct the Title III Court to treat comity to state law and state courts as a basis for abstention, unlike its Bankruptcy Code analog.

Third, the Title III Court erred in relying on LUMA's alleged forum shopping. LUMA is not forum shopping; this case belongs in Title III Court because PREPA is a defendant, the dispute relates to some of

21

PREPA's most important assets, and the parties to the OMA did not contemplate PREPA would still be in Title III at this stage of their relationship. In addition, forum shopping should not be a material factor under PROMESA section 309 when the alternative forum is a local Puerto Rico court to which the Title III Court owes no comity.

Fourth, the Title III Court failed to apprehend that the Threshold Dispute will materially affect the efficient administration of PREPA's Title III estate.[7] The court took a myopic view of the dispute and failed to consider the practical consequences of how abstaining now will interfere with the Title III Court's oversight of later decisions that will have major effects on PREPA's restructuring.

Fifth, the Title III Court gave far too much weight to the burden this matter would add to the court's docket. There is nothing unique about the burden of this adversary proceeding compared to any other

---

[7] LUMA uses the term "estate" because that is the term used by relevant case law in the bankruptcy context to refer to debtors' assets. PROMESA clarifies that, when applying bankruptcy code provisions applicable in Title III matters, "property of the estate" means "property of the debtor." 48 U.S.C. § 2161(c)(5). The Title III Court and the First Circuit regularly refer to PREPA's "estate." *See, e.g., Fin. Oversight & Mgmt. Bd. for P.R. v. U.S. Bank N.A. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 121 F.4th 280, 290 (1st Cir. 2024).

adversary proceeding, particularly where, as here, the matter implicates both the debtor (PREPA) and its assets.

Sixth, the Title III Court failed to consider other important factors, including that declining to abstain would not interfere with any jury trial rights, and that the debtor, PREPA, is the real defendant in interest here.

Considering these errors together, the Title III Court abused its discretion when it decided to abstain. The Title III Court erroneously found that the lack of a related proceeding in the local Puerto Rico courts is the "sole factor" weighing against abstention. In fact, there are many. This Court should reverse.

## ARGUMENT

The Title III Court's authority to abstain in this case derives from PROMESA section 309, 48 U.S.C. § 2169, which states that "[n]othing in this subchapter prevents a district court in the interests of justice from abstaining from hearing a particular proceeding arising in or related to a case under this subchapter." This language is similar to the language of 28 U.S.C. § 1334(c)(1), which provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of

23

comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

In the First Circuit, courts traditionally consider 12 factors when deciding whether abstention is appropriate under 28 U.S.C. § 1334(c)(1):

(1)    the effect on the efficient administration of the estate;

(2)    the extent to which state law issues predominate over bankruptcy issues;

(3)    the unsettled nature of applicable law;

(4)    the presence of a related proceeding commenced in state court;

(5)    the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6)    the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)    the substance rather than form of an asserted core proceeding;

(8)    the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court to be enforced in bankruptcy court;

(9)    the burden on the bankruptcy docket;

(10)    the likelihood that the commencement of the proceeding in

24

bankruptcy court involves forum shopping by one of the parties;

(11)  the right to jury trial; and

(12)  the presence of non-debtor parties.

*E.g., Asociación de Salud Primaria*, 330 F. Supp. 3d at 682; *In re New Eng. Compounding Pharm. Prods. Liab. Litig.*, 496 B.R. 256, 273 (D. Mass. 2013).

LUMA has not identified any decision of this Court analyzing the applicability of the factors developed under 28 U.S.C. § 1334(c)(1) to abstention decisions under PROMESA section 309. Given the similarity in the two statutes, the Title III Court has repeatedly looked to courts' abstention analyses under 28 U.S.C. § 1334(c)(1) for guidance in how to analyze abstention under section 309. *See, e.g.*, Add. 21 (citing *Asociacion de Salud Primaria*, 330 F. Supp. 3d at 682–83).

This analogy makes some sense: the "presumption of consistent usage" canon suggests that when Congress used the same language in PROMESA that it used in the Bankruptcy Code, it meant the same thing in both places. *See, e.g., HollyFrontier Cheyenne Refining, LLC v. Renewable Fuels Ass'ns*, 594 U.S. 382, 389 (2021) Further, "Congress is presumed to be aware of an administrative or judicial interpretation of a

25

statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T. A.,* 557 U.S. 230, 239–40 (2009). Thus, when Congress enacted PROMESA section 309, it is presumed to have been aware of the analysis courts have applied when evaluating abstention under 28 U.S.C. § 1334(c)(1). It therefore stands to reason that Congress intended that case law to also inform abstention decisions under PROMESA section 309. Below, we assume, as the parties and the Title III Court did below, that the same 12 factors courts consider when abstaining under 28 U.S.C. § 1334(c)(1) also apply to abstention decisions under PROMESA.

That said, it is important to point out that in enacting section 309, Congress did not copy 28 U.S.C. § 1334(c)(1) verbatim. Rather, it omitted certain language, suggesting that the abstention analysis is not completely identical in the Title III context. In particular, Congress omitted the phrases "or in the interest of comity with State courts or respect for State law" and "arising under."

These omissions suggest two things regarding the analysis of the abstention factors. First, by deleting "comity" as an appropriate basis for abstention, Congress indicated that it did ***not*** want the Title III Court to

26

give the same sort of deference to Puerto Rico courts on matters of Puerto Rico law that bankruptcy courts traditionally give to states under 28 U.S.C. § 1334(c)(1). Second, Congress wanted to ***narrow*** the exercise of abstention in the PROMESA context as compared to ordinary bankruptcy proceedings and thereby keep more matters in Title III Court. This is indicated by the deletion of "comity" from consideration and the fact that Congress declined to authorize the Title III Court to even ***consider*** abstaining in the case of matters "arising under" PROMESA.

The Title III Court did not consider these differences when it issued its ruling. As noted, this Court reviews statutory interpretation *de novo*. Below we discuss how the Title III Court's misapplication of case law developed under 28 U.S.C. § 1334(c)(1) in the PROMESA context led to an abuse of discretion in its abstention analysis.

## I. The Title III Court failed to consider case law advising against abstention in "core" proceedings.

The Title III Court failed entirely to consider how the fact that this matter would qualify as a "core" proceeding under the Bankruptcy Code impacts the abstention analysis. Multiple abstention factors developed under 28 U.S.C. § 1334(c)(1) require consideration of this fact, and this

Court has squarely held that "[a] finding that a matter is a core proceeding weighs heavily in favor of a denial of abstention." *Arnold Print Works*, 815 F.2d at 171 (quoting *Franklin Computer Corp. v. Harry Strauss & Sons, Inc. (In re Franklin Computer Corp.)*, 50 B.R. 620, 626 n.8 (Bankr. E.D. Pa. 1985)). Indeed, abstention is "totally unwarranted when there has been a determination that a proceeding is core." *Id.* (quoting *Steinburg v. Esposito (In re Pioneer Dev. Corp.)*, 47 B.R. 624, 628 (Bankr. N.D. Ill. 1985)).

The Title III Court did not even determine whether this case would qualify as a "core" proceeding under the Bankruptcy Code. It does. Numerous courts, including this Court, have held that state law contract disputes concerning a debtor's post-petition contract are core proceedings. *See, e.g., Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165, 171 (1st Cir. 1987) (Breyer, J.); *Ben Cooper, Inc. v. Insurance Co. of State of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1400 (2d Cir. 1990), *vacated on other grounds*, 498 U.S. 956 (1990), *reinstated*, 924 F.2d 36 (2d Cir. 1991); *Agri-Concrete Prods. v. Fabcor, Inc. (In re Agri-Concrete Prods., Inc.)*, 153 B.R. 673, 676–77 (Bankr. M.D. Pa. 1993); *Lipshie v. AM Cable TV Indus. (In re Geauga*

28

*Trenching Corp.)*, 110 B.R. 638, 646 (Bankr. E.D.N.Y. 1990); *Pettus Props., Inc. v. VFC Partners 8, LLC (In re Pettus Props., Inc.)*, Adversary No. 11-3213, 2012 WL 956915, at \*3 (Bankr. W.D.N.C. Mar. 20, 2012); *Blackjewel Liquidation Tr. v. Kopper Glo Mining, LLC (In re Blackjewel L.L.C.)*, Adv. No. 22-3001, 2022 WL 17184810, at \*5 (Bankr. S.D. W. Va. Nov. 23, 2022).

In *Arnold Print Works*, this Court explained that "parties who contract with a bankrupt company's trustee or with a debtor-in-possession know that they are dealing with an agent responsible to a bankruptcy court." 815 F.2d at 170. In surveying the legislative history of the Bankruptcy Code, this Court concluded "that Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with Constitutional limits." *Id.* at 168. It then held that the "Constitution permits a non-Article III bankruptcy court to adjudicate post-petition claims related to administration or liquidation of a debtor's estate." *Id.* at 169. It concluded by holding that a dispute concerning post-petition contracts "falls within the statutory category of core proceedings." Id. at 171.

Similarly, in *Ben Cooper*, the Second Circuit held that post-petition

29

contracts with the debtor in possession are integral to the estate administration. 896 F.2d at 1399 (citing *Arnold Print Works*, 815 F.2d at 169–170). The Second Circuit found it especially persuasive that the bankruptcy court's confirmation of the plan depended on the existence of the post-petition contract. *Id.* The court ultimately held that "the bankruptcy court has core jurisdiction, pursuant to § 157(b)(2)(A), over contract claims under state law when the contract was entered into post-petition." *Id.* at 1400.

Here, the OMA is one of PREPA's most important post-petition contracts and is a critical part of its ongoing restructuring efforts.[8] LUMA's action seeks a declaration regarding the rights of the parties concerning this post-petition contract, which is considered property of the debtor. *See Dalmau v. P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, Adv. Proc. No. 21-0059-LTS, 2022 WL 17413011, at \*21–22 (D.P.R. Feb. 7, 2022) (finding the OMA is property of PREPA). Accordingly, this

---

[8] PREPA and the Oversight Board agree. *See* PREPA's First Motion for Entry of an Order Allowing Administrative Expense Claim at 4, *In re Fin. Oversight & Mgmt. Bd. of P.R.*, No. 17 BK 4780-LTS (July 7, 2020) (Dkt. No. 2053) (the OMA is "a key component in PREPA's ongoing transformation"); *id.* at 18 ("a crucial component of PREPA's operational restructuring").

30

matter satisfies the definition of a "core" proceeding.

It is unclear why the Title III Court did not consider the "core" proceeding" issue in its abstention analysis, given that it has been recognized as a critical factor in analyzing abstention under 28 U.S.C. § 1334(c)(1). The Title III Court gave no reason for ignoring this factor. *See* Add. 21–24. However, in a footnote addressing "arising in" jurisdiction (a different issue), the Title III Court observed that PROMESA "neither incorporates 28 U.S.C § 157(b) nor explicitly provides for any 'core' versus 'non-core' distinction in determining the scope of the Court's subject matter jurisdiction." Add. 18.

Assuming for the sake of argument that the Title III Court declined to consider the "core" issue in analyzing abstention for the same reason it declined to consider it in the jurisdictional context, *see* App. 18, that was a mistake. The purpose of distinguishing between "core" and "non-core" matters in the Bankruptcy Code is simply to delineate which proceedings are integral to bankruptcy's function of restructuring debtor and creditor rights. *See Arnold Print Works*, 815 F.2d at 167. When a matter is "core," it is, by definition, within the bankruptcy court's jurisdiction. *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 662 n.5 (1st Cir.

31

2017) (citing *Continental Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1345 n.6 (11th Cir. 1999)). When it comes to abstention, there is no logical reason why the qualities that make a proceeding "core" would not matter just as much under PROMESA as they do under the Bankruptcy Code. Indeed, as noted above, it appears that Congress intended abstention to occur **less often** under PROMESA than it does under the Bankruptcy Code. So, if anything, that this would be a "core" proceeding under the Bankruptcy Code should have received **greater**, not less, weight than it would under the Bankruptcy Code.

By failing even to consider the authority advising against abstention in "core" proceedings like this one, the Title III Court erred. That this matter involves a "core" proceeding involving a dispute with the debtor (PREPA) over a post-petition contract "weighs heavily in favor of a denial of abstention." *Arnold Print Works*, 815 F.2d at 171. This error by itself constitutes an abuse of discretion because "a relevant factor deserving of significant weight [was] overlooked." *Santana-Avilés*, 120 F. 4th at 7.

II. **The Title III Court abused its discretion by giving too much weight to the predominance of Puerto Rico law issues that are not novel or complex.**

The Title III Court also erred in the emphasis it placed on the predominance of Puerto Rico law issues. *See* Add. 22. As discussed above, Congress made clear that the Title III Court should ***not*** give the same deference to Puerto Rico that bankruptcy courts give to states in the abstention analysis. Thus, the mere fact that this case involves interpretation of a contract under Puerto Rico law does ***not*** mean abstention is appropriate.

Further, the Title III Court wholly failed to consider another relevant factor that undermines the "predominance" issue: this matter does not involve novel or unsettled issues of Puerto Rico law. Even when state law issues predominate, abstention is unwarranted when they are neither novel nor complex. *See Flores Rivera v. Telemundo Grp.*, 133 B.R. 674, 677 (D.P.R. 1991) (declining to abstain from hearing defamation action where complaint was "based on issues of law that are neither novel, complex nor unsettled"); *Mec Steel Bldgs. v. San Lorenzo Contr. Grp. (In re Mec Steel Bldgs., Inc.)*, 136 B.R. 606, 611 (Bankr. D.P.R. 1992) ("[D]iscretionary abstention is not warranted despite the fact that state

33

law issues are predominant when the applicable state law is neither unsettled nor difficult."). Here, the issues raised in LUMA's action are matters of contract interpretation governed by Commonwealth law. Interpretation of the OMA does not involve the type of novel or complex issues of Puerto Rico law that would weigh in favor of abstaining even in a traditional case under 28 U.S.C. § 1334(c)(1), let alone under PROMESA section 309.

Courts analyze this factor as part of the comity analysis under 28 U.S.C. § 1334(c)(1). *See Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993) ("[B]ecause section 1334(c)(1) is concerned with comity and respect for state law, whether a case involves unsettled issues of state law is always significant." (citing *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483 (1940))). But as noted, under PROMESA section 309, the abstention analysis does ***not*** concern comity or respect for state law. Add. 26. Accordingly, on this basis alone the Title III court abused its discretion because in its decision, "an improper factor is accorded significant weight." *Santana-Avilés*, 120 F.4th at 7.

III. **The Title III Court erred in relying on alleged forum shopping.**

The Title III Court also erred in its reliance on LUMA's alleged

34

forum-shopping. Again, under PROMESA section 309, "comity" to local Puerto Rico courts is not a basis for abstention. Given that, whether LUMA is "forum-shopping" should not even be a consideration in the PROMESA abstention analysis, because the Title III Court owed no deference to local Puerto Rico courts.

Further, LUMA is **not** forum shopping. Rather—and consistent with public policy—LUMA brought this matter to the forum it believes is the appropriate forum to decide this dispute. PREPA is a defendant and the debtor in these Title III proceedings, and the underlying disputes relate to property of the debtor (the OMA) and LUMA's operation and maintenance of property of the debtor (the T&D system). So it naturally made sense to file this action in Title III Court. Indeed, as described below, the resolution of this dispute could have consequences that would ripple through PREPA's restructuring. *Infra* Part IV.

In finding LUMA may be forum shopping, the Title III Court principally relied on the OMA's forum selection clause, which refers to Commonwealth Court, not Title III Court. *See* Add. 23. But the Title III Court overlooked that when the parties executed the OMA in June 2020, they did not contemplate that PREPA would still be in Title III six years

later. The forum selection clause in the OMA was designed to govern disputes **after** PREPA exited Title III, under the (mistaken) belief that PREPA's restructuring would be completed in the near future. *See, e.g.*, Government Parties' Motion for Order Allowing Administrative Expense Claim at 3, *In re Fin. Oversight & Mgmt. Bd. of P.R.*, No. 17 BK 4780-LTS (Mar. 26, 2021) (Dkt. No. 2417) ("The T&D Contract initially envisioned PREPA would emerge from Title III before the date LUMA energy completed the Front-End Transition Period and assumed full control of the T&D System."). Because PREPA is still in restructuring, however, the Title III Court, and not the Commonwealth Court, is the appropriate place for matters relating to PREPA's core contract to be resolved, given its ongoing significance to PREPA's restructuring.

Under these circumstances, it is not "forum shopping" to bring an action in Title III Court, rather than in the forum identified by the contract. Indeed, bankruptcy courts routinely decline to follow forum selection clauses because it contravenes public policy in favor of adjudicating core proceedings in bankruptcy court. *See, e.g., N. Parent, Inc. v. Commer & Co. (In re N. Parent, Inc.)*, 221 B.R. 609, 620 (Bankr. D. Mass. 1998) ("Retaining core proceedings in this Court, in spite of a valid

36

forum selection clause, promotes the well-defined policy goals of centralizing all bankruptcy matters in a specialized forum to ensure the expeditious reorganization of debtors."); *Wheeling-Pittsburgh Steel Corp. v. Blue Cross and Blue Shield of W. Va., Inc. (In re Wheeling-Pittsburgh Steel Corp.)*, 108 B.R. 82, 85 (Bankr. W.D. Pa. 1989) (declining to enforce forum selection clause in core proceeding because "[p]ublic policy favors centralization of bankruptcy proceedings in the bankruptcy court where the case is pending"); *Mercury Masonry Corp. v. Terminal Constr. Corp. (In re Mercury Masonry Corp.)*, 114 B.R. 35, 39 (Bankr. S.D.N.Y. 1990) (declining to enforce forum selection clause in core proceeding); *Ellwood City Iron & Wire Co. v. Flakt, Inc., Env't Sys. Div. (In re Ellwood City Iron & Wire Co.)*, 59 B.R. 53, 53 (Bankr. W.D. Pa. 1986) (same). The Title III Court erred when it gave significant weight to LUMA's alleged forum shopping in its analysis.

## IV.   The Title III Court failed to apprehend how this case will affect the efficient administration of PREPA's estate.

The Title III Court also erred in concluding that this matter will not affect the efficient administration of PREPA's estate because only the dispute resolution process—and not the merits of the underlying disputes—is currently at issue. Add 21. That reasoning takes an unduly

37

cramped view of the real stakes here, and it fails to appreciate the consequences of determination of the Threshold Dispute will ultimately have on the administration of PREPA's assets.

It is important to keep in mind that what P3A fundamentally seeks through its Notice of Dispute is an excuse to terminate the OMA.[9] The Government has repeatedly and publicly stated that was the objective of serving the Notice of Dispute. To achieve that objective, P3A seeks to adjudicate LUMA's alleged failures to perform its obligations under the OMA in an expedited, confidential proceeding before an "Independent Expert" who is not accountable to anyone and whose decision is unreviewable. P3A's goal here is not to obtain a fair determination of whether LUMA in fact breached its OMA obligations; the proceeding is just a pretext to terminate.

---

[9] *See, e.g.*, DailyEnergyInsider, *Beneath the Blackouts: Energy scandals and political theater in Puerto Rico*, *available at* https://dailyenergyinsider.com/news/49098-beneath-the-blackouts-energy-scandals-and-political-theater-in-puerto-rico/ (dated July 30, 2025); *see also* El Nuevo Dia, *Gobierno solicitará cancelar el contrato de LUMA Energy antes que termine este año* (translated: "The Government will request to cancel LUMA Energy's contract before the end of the year.") available at https://www.elnuevodia.com/noticias/legislatura/notas/gobierno-solicitara-cancelar-el-contrato-de-luma-energy-antes-que-termine-este-ano/ (dated May 21, 2025).

The resolution of these disputes about LUMA's performance could have dramatic consequences for PREPA, other creditors, and the Puerto Rican public more broadly. The OMA is PREPA's property and a core element of any restructuring plan for PREPA. So are the extensive T&D system assets that LUMA operates and maintains pursuant to the OMA. The determination of what LUMA is required to do to operate and maintain that system under the OMA is of critical importance to protecting PREPA's most valuable assets. And a determination that LUMA has not met its obligations under the OMA may result in termination of the OMA, which could substantially delay progress in PREPA's Title III case and negatively affect the preservation of PREPA's T&D assets. The OMA is a cornerstone of PREPA's restructuring, and there is currently no alternative qualified private operator standing ready to jump in and take over the T&D system. In the absence of such an alternative, the termination could very well result in PREPA resuming operation and maintenance of the T&D system—the very system that PREPA grossly mismanaged for decades. Not only would that reversion be contrary to Act 120 and PREPA's fiscal plan, it would also be calamitous for the T&D system and the delivery of electricity to

39

Puerto Rico consumers.

Given the consequences these disputes may have for PREPA's Title III case, they should be adjudicated in Title III Court, not in a confidential, expedited, non-appealable proceeding before an unaccountable "Independent Expert." When the Title III Court concluded that only the Threshold Dispute was presently before it, it ignored the fact that its decision not to hear the Threshold Dispute necessarily means that these underlying issues *will not be adjudicated in Title III Court*. As a practical matter, there is no mechanism by which this matter will return to Title III Court for a merits hearing, once the Threshold Dispute is decided in another forum. This was likely the Title III Court's one and only chance to take the reins over the underlying disputes.

## V.    The Title III Court abused its discretion by giving too much weight to the potential burden on its docket.

The Title III Court also erred by giving significant weight to the potential burden this matter would place on its docket. Indeed, *every* adversary proceeding necessarily places an additional burden on the Title III Court's docket. *See In re AOG Entertainment, Inc.*, Adv. Pro. No. 18-01540 (SMB), 2019 WL 1054921, at *10 (Bankr. S.D.N.Y. Mar. 5 2019) ("Although any litigation is a burden on the Court's docket . . . I cannot

40

conclude that this factor weighs in favor of abstention for that reason.")

In addition, the Title III Court erred because it reasoned that this dispute "involves non-debtor parties, LUMA and P3A, with no direct impact on PREPA's Title III case." Add. 24. For one thing, those facts do not go to "burden" at all. For another, the Title III Court's reasoning ignores that PREPA (the debtor) is also a defendant and is the real party in interest, *infra* Part VI, and the ways in which, discussed above, this matter *will* "direct[ly] impact" PREPA's Title III case, *supra* Part IV.

## VI. The Title III Court failed to consider other relevant factors.

In addition to the foregoing errors, the Title III Court also erred by failing to consider other factors relevant to the abstention analysis.

--  **No jury trial issue**: The parties waived their jury trial rights in the OMA. OMA § 15.7. And even, if they hadn't, Puerto Rico does not provide jury trials in civil cases. *See González-Oyarzun v. Caribbean City Builders, Inc.*, 798 F.3d 26, 29 (1st Cir. 2015) (holding U.S. Constitution does not require Puerto Rico to provide a jury trial in civil cases). This factor therefore weighs against abstention because there is no difference in the availability of a jury trial between proceeding in the Title III Court or in local Puerto Rico courts.

41

-- **Debtor is a party**: The Title III Court also erred by failing to consider that this case does not involve only non-debtor parties; PREPA is a defendant and the ***real*** defendant in interest here. The OMA is in essence a relationship between PREPA and LUMA, and LUMA's alleged breaches of the OMA, and the potential termination of the OMA, is primarily an issue for PREPA, not P3A. P3A is merely the "administrator" who purports to act on behalf of PREPA. The actions P3A is taking here, including serving the Notice of Disputes, are fundamentally taken on behalf of PREPA. As the Puerto Rico Supreme Court recently observed, P3A "is not an essential party to the lawsuit before us [seeking to invalidate section 4.1(g) of the OMA], for the simple reason that, as administrator, it does not have a real and immediate interest in it. Certified Translation of *Departamento de Asuntos del Consumidor v. LUMA Energy, LLC*, 2025 PRSC 126 at p. 34. So too here.

## VII. Considering all of these errors together, the Title III Court abused its discretion.

"[F]ederal courts generally should exercise their jurisdiction if properly conferred and [] abstention is the exception rather than the rule." *Colarusso*, 382 F.3d at 57. When all of the above-described errors are considered together, the Title III Court's abuse of discretion is clear.

42

Contrary to the Title III Court's findings, the absence of a pending state proceeding is *not* the sole factor weighing against abstention. Rather, the substance of this proceeding is core and, as noted, abstention is "totally unwarranted when there has been a determination that a proceeding is core." *Arnold Print Works*, 815 F.2d at 171 (quoting *In re Pioneer Dev. Corp.*, 47 B.R. 624 at 628). That Puerto Rico law issues predominate deserves little weight because they are neither novel nor unsettled, and because Congress made it clear when enacting PROMESA section 309 that comity to Puerto Rico should not be a significant factor in the abstention analysis. LUMA is not forum shopping, and in any event, alleged forum shopping should not receive significant weight under PROMESA section 309. This case *will* affect the efficient administration of PREPA's estate, and the Title III Court may not get a second chance to oversee this critical part of that process. The burden this case will add to the Title III Court's docket is no different than any other case. The right to a jury trial is entirely unaffected by declining to abstain. And PREPA, the debtor, is both a defendant and the real party in interest. In short, "there [was] a palpable error of judgment in calibrating the decisional scales." *Santana-Avilés*, 120 F.4th at 7.

43

In enacting PROMESA section 309, Congress made clear that it wanted the Title III Court to abstain only "in the interests of justice." It was not "in the interests of justice" for the Title III Court to abstain from hearing this dispute. In sum, the abstention factors weigh overwhelmingly against abstaining. The Title III Court abused its discretion when it abstained from hearing this matter.

## CONCLUSION

For the foregoing reasons, LUMA respectfully requests that this Court reverse the decision of the Title III Court.

Dated: May 11, 2026
San Juan, Puerto Rico

Respectfully submitted,

*/s/ David M. Horniak*
David Horniak (Bar No. 1187585)
**DLA PIPER LLP (US)**
500 8th Street, NW
Washington, DC 20004
T: (202) 799-4361
F: (202) 799-4362
david.horniak@us.dlapiper.com

Dale K. Cathell (Bar No. 1143481)
Brett Ingerman (Bar No. 1220681)
**DLA PIPER LLP (US)**
650 S. Exeter Street, Ste. 1100
Baltimore, MD 21202-4576
T: (410) 580.4177
dale.cathell@us.dlapiper.com
brett.ingerman@us.dlapiper.com

44

Mariana Muñiz Lara (Bar No. 1172817)
**DLA PIPER (PUERTO RICO) LLC**
B7 Tabonuco Street, Ste. 1501
Guaynabo, Puerto Rico 00968-3349
T: (787) 945.9106
Mariana.muniz@us.dlapiper.com

*Counsel for Appellants LUMA Energy, LLC, and LUMA Energy Servco, LLC*

45

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify:

1.    This document complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,413 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Size 14 Century Schoolbook.

May 11, 2026                                   Respectfully submitted,

/s/David M. Horniak
David Horniak
**DLA PIPER LLP (US)**
500 8th Street, NW
Washington, DC 20004
T: (202) 799-4361
F: (202) 799-4362
david.horniak@us.dlapiper.com

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2026, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

May 11, 2026                          Respectfully submitted,

*/s/ David M. Horniak*
David Horniak
**DLA PIPER LLP (US)**
500 8th Street, NW
Washington, DC 20004
T: (202) 799-4361
F: (202) 799-4362
david.horniak@us.dlapiper.com

*Counsel for Appellants*

# ADDENDUM

Memorandum Order Dismissing Adversary Proceeding and
   Denying Motion for Provisional Relief ......................................... Add. 1

Judgment ................................................................................. Add. 26

48 U.S.C.A. § 2169 ................................................................... Add. 28

28 U.S.C.A. § 1334 ................................................................... Add. 29

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:                                                    PROMESA

THE FINANCIAL OVERSIGHT AND                               Title III
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of                              No. 17 BK 3283-LTS

THE COMMONWEALTH OF PUERTO RICO                           (Jointly Administered)
et al.,

    Debtors.[1]

-------------------------------------------------------------x

In re:                                                    PROMESA

THE FINANCIAL OVERSIGHT AND                               Title III
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of                              No. 17 BK 4780-LTS

PUERTO RICO ELECTRIC POWER
AUTHORITY,

    Debtor.

-------------------------------------------------------------x

LUMA ENERGY, LLC and LUMA ENERGY
SERVCO, LLC,

    Plaintiffs,                                       Adv. Proc. No. 25-00043-LTS
                                                      in 17 BK 4780-LTS

---

[1]    The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (v) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).  On October 30, 2024, the Title III case for the Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) was closed.

251219 MEM ORD RE PROV RELIEF MOT (JURISD)    VERSION DECEMBER 19, 2025    1
Add.1

-v-

PUERTO RICO ELECTRIC POWER
AUTHORITY and PUERTO RICO PUBLIC-
PRIVATE PARTNERSHIPS AUTHORITY,

Defendants.

----------------------------------------------------------------x

### MEMORANDUM ORDER DISMISSING ADVERSARY
### PROCEEDING AND DENYING MOTION FOR PROVISIONAL RELIEF

Pending before the Court is the *Motion for Provisional Relief* (Docket Entry No. 28) (the "Motion"), filed by LUMA Energy, LLC and LUMA Energy Servco, LLC (collectively, "LUMA"), that seeks certain provisional relief against the Puerto Rico Electric Power Authority ("PREPA") and the Puerto Rico Public-Private Partnerships Authority ("P3A" and, together with LUMA and PREPA, the "Parties"), each a defendant in the above-captioned adversary proceeding, pursuant to the Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement, dated as of June 22, 2020, by and among PREPA, P3A, and LUMA, as supplemented (Docket Entry No. 1-1) (the "T&D OMA").[2]

On September 3, 2025, the Court entered an order (Docket Entry No. 26) (the "Scheduling Order") that, among other things, bifurcated briefing on the Motion into two phases: (i) whether the Court has jurisdiction to hear the matter and, if so, whether the Court should abstain from exercising its jurisdiction; and (ii) to the extent the Court concludes it has such jurisdiction and should not abstain, the merits of the Motion.  This Memorandum Order addresses solely the matters raised in the first phase of briefing.

---

[2]     All docket entry references are to those in Adv. Proc. No. 25-00043 (the "Adversary Proceeding"), unless otherwise noted.

**Add.2**

P3A—through its agent, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF")—filed papers in opposition to the Motion (Docket Entry No. 33) (the "P3A Jurisdictional Opposition"), requesting dismissal of the complaint (Docket Entry No. 1) (the "Complaint") for lack of subject matter jurisdiction or, alternatively, the Court's abstention to the extent the Court concludes such jurisdiction exists.  Each of LUMA and the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), on behalf of PREPA, have filed replies.[3]  (See *LUMA Energy, LLC and LUMA Energy Servco, LLC's Reply to Puerto Rico Public-Private Partnerships Authority's Jurisdictional Opposition*, Docket Entry No. 46 (the "LUMA Reply"); *Reply of the Financial Oversight and Management Board for Puerto Rico to the Opposition of the Puerto Rico Public-Private Partnerships Authority to LUMA's Complaint and Motion for Provisional Relief Based on Lack of Subject Matter Jurisdiction*, Docket Entry No. 47 (the "FOMB Reply").)  P3A filed a surreply (Docket Entry No. 51) (the "P3A Surreply") solely with respect to the FOMB Reply.

The Court has considered carefully all of the submissions and, for the reasons discussed below, concludes that, while dismissal for lack of subject matter jurisdiction is not required, abstention from adjudicating the Adversary Proceeding is nonetheless appropriate. Given the Court's ruling, the Court need not reach the merits of the Motion, and the second phase of briefing, as contemplated by the Scheduling Order, will not take place.

---

[3]     LUMA supplemented the LUMA Reply with an additional exhibit (Docket Entry No. 58-2).  (See *Order Granting Motion of LUMA Energy, LLC and LUMA Servco, LLC for Leave to Supplement Reply to Puerto Rico Public-Private Partnerships Authority's Jurisdictional Opposition with Additional Exhibit*, Docket Entry No. 63.)

BACKGROUND

The material facts set forth herein are drawn from the Complaint and exhibits attached thereto, unless otherwise specified, and are undisputed.

1.  The Parties and the T&D OMA

PREPA, a public corporation and instrumentality of the Government of Puerto Rico, is owner of a transmission and distribution system (the "T&D System").  (Compl. ¶¶ 18-19.)  On July 2, 2017, the Oversight Board filed a voluntary petition for relief for PREPA pursuant to Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").[4]  (Compl. ¶ 23.)

After the commencement of PREPA's Title III case, the Puerto Rico legislature enacted the Puerto Rico Electric Power System Transformation Act, Act 120-2018 (as amended, "Act 120") on June 21, 2018, as part of an effort to modernize and improve Puerto Rico's electric system.  (Compl. ¶¶ 25-26.)  Among other things, Act 120 established a legal framework for the sale, disposition, and/or transfer of PREPA's assets, operations, functions, and services, including a transaction under which a private manager would assume the operation and management of the T&D System while ownership of the system remained with PREPA.  (Compl. ¶ 26.)

Under Act 120, P3A, a public corporation, is the designated government entity responsible for facilitating public-private partnerships in the electric sector.  (See P3A

---

[4]    PROMESA is codified at 48 U.S.C. § 2101 et seq.  References to "PROMESA" section numbers in the remainder of this Memorandum Order are to the uncodified version of the legislation.  References herein to the provisions of Title 11 of the United States Code (the "Bankruptcy Code") are to sections made applicable in these cases by section 301 of PROMESA, 48 U.S.C. § 2161, unless otherwise stated.

Jurisdictional Opp. ¶ 1; FOMB Reply ¶ 9.)  In its role, P3A established a "Partnership Committee" that, following a competitive bidding process, ultimately selected LUMA to serve as the operation and maintenance service provider.  (Compl. ¶ 27.)

On June 22, 2020, the Parties entered into the T&D OMA, which provided for LUMA to assume the operation and management of the T&D System, PREPA to retain ownership of the same, and P3A to serve as the "Administrator" and oversee the contract's operation and liaise between LUMA and PREPA.[5]  (Compl. ¶ 35.)  Pursuant to the T&D OMA, LUMA has served as "Operator" of the T&D System since June 1, 2021.  (Compl. ¶ 15.)

2.  Dispute Resolution Under the T&D OMA

As relevant here, and subject to certain exceptions, Article 15 of the T&D OMA sets forth the "sole and exclusive procedures" for the resolution of "any dispute among the Parties arising out of, relating to or in connection with [the T&D OMA] or the existence, interpretation, breach, termination or validity thereof" (each, a "Dispute").[6]  (T&D OMA § 15.1.)  In connection with such procedures, LUMA "acknowledges and agrees that [P3A] (or any Designated Person appointed by [P3A]) shall be authorized to participate in or act for and on behalf of [PREPA]."  (T&D OMA § 15.1.)

As a general matter, written notice of a Dispute commences the Article 15 dispute resolution procedures, which then require "Designated Person[s]" of each Party to "negotiate in

---

[5]   The T&D OMA was approved by the boards of directors of P3A and PREPA, the Governor of Puerto Rico, the Oversight Board, and other key stakeholders.  (Compl. ¶ 27.)  In addition, the Puerto Rico Energy Bureau evaluated the T&D OMA and issued the Energy Certificate of Compliance, certifying that the agreement complied with Act 120 and the governing regulatory framework.  (Compl. ¶ 27; T&D OMA at 11.)

[6]   "Parties" in the T&D OMA is defined to include LUMA, PREPA, and P3A.  Other defined terms used by reference to the T&D OMA and not otherwise defined for that purpose herein shall have the meanings ascribed to them in the T&D OMA.

good faith and attempt to resolve the Dispute within [thirty] days" from the issuance of such

notice, unless otherwise extended (the "Negotiation Period"). (T&D OMA §§ 15.2(a), 15.3(a).)

In the event a Dispute remains unresolved after the Negotiation Period concludes, the T&D

OMA offers two paths for a "final and binding determination" that hinge on whether the Dispute

is a "Technical Dispute."[7] (T&D OMA § 15.3(b).)

Where a Dispute is a "Technical Dispute," it "shall be referred to an independent

expert" in accordance with the procedures and confidentiality provisions set forth in section 15.4

for resolution (an "Expert Technical Determination"). (T&D OMA § 15.4.) For all other

Disputes, either LUMA or P3A "may refer the Dispute to mediation" through written notice.

(T&D OMA § 15.5(a); see also T&D OMA §§ 15.5(b)-(c) (outlining the procedures and

confidentiality parameters governing mediation).) If mediation proves unsuccessful and the

Dispute remains unresolved ninety days after the date the mediator is selected, "either Party may

initiate a civil action in the Commonwealth Court."[8] (T&D OMA § 15.6(a).)

---

[7]    The T&D OMA sets forth an exclusive list of what comprises a "Technical Dispute," defining each of the following terms: (i) "Front-End Transition Service Fee Estimate Dispute; (ii) "Front-End Transition Service Fee Dispute"; (iii) "Back-End Transition Service Fee Estimate Dispute"; (iv) "Back-End Transition Service Fee Dispute"; (v) "Handover Checklist Dispute"; (vi) "Administrator Dispute"; (vii) "Service Fee Dispute"; (viii) "Budget Dispute"; (ix) "Service Account Dispute"; (x) "Disallowed Costs Dispute"; and (xi) "Force Majeure Event Dispute." (T&D OMA § 15.3(b)(i).) In addition, PREPA and P3A may also "mutually agree in writing" that an "engineering or technical dispute . . . is a Technical Dispute." (T&D OMA § 15.3(b)(i).)

[8]    The T&D OMA characterizes litigation as a "final resort." (See T&D OMA § 15.6.) Indeed, each Party to the T&D OMA "agrees that it may not initiate a civil action as provided in Section 15.6 . . . (other than provisional relief sought on an expedited basis) unless (i) the matter in question has first been submitted to mediation . . . or (ii) such Party would be barred from asserting its claim in a civil action if it were required to submit to mediation." (T&D OMA § 15.5(a).) The term "Commonwealth Court" is defined in the T&D OMA to refer to the "Commonwealth Court of First Instance, San Juan Part." (T&D OMA at 8.)

With respect to litigation under the T&D OMA, section 15.6(a) of the T&D OMA provides that "[t]he Parties acknowledge and understand that, to resolve any and all claims arising out of [the T&D OMA] (other than any Technical Dispute), they may file a civil action . . . in the Commonwealth Court." (T&D OMA § 15.6(a).) The provision notes that "[PREPA] and [LUMA] each irrevocably consents to the exclusive jurisdiction of such courts in any such actions or proceedings, waives any objection it may have to the jurisdiction of any such action or proceeding, as well as objections or defenses based on sovereign immunity." (T&D OMA § 15.6(a).) The Parties further "acknowledge and agree that the terms and conditions of [the T&D OMA] have been freely, fairly and thoroughly negotiated." (T&D OMA § 15.6(a).)

Notwithstanding the foregoing, section 15.8 of the T&D OMA permits the Parties to initiate "a proceeding in the Commonwealth Court for the purpose of obtaining any emergency or provisional remedy to protect its rights that may be necessary and that is not otherwise available under [the T&D OMA]." (T&D OMA § 15.8.) With respect to "Technical Disputes," the commencement of or participation in such an action for provisional relief does "not constitute a waiver of the requirements or procedures of Section 15.5," which govern mediation. (T&D OMA § 15.8.)

3. The P3A Disputes and the Threshold Dispute

On July 22, 2025, P3A, in its capacity as Administrator under the T&D OMA, served a notice of dispute on LUMA (Docket Entry No. 1-2) (the "Notice of Dispute") that set forth six issues of dispute (collectively, the "P3A Disputes"), each of which P3A has categorized as a "Technical Dispute." (Compl. ¶ 41; *Amended Joint Status Report Regarding Motion to Seal and Motion for Provisional Relief*, Docket Entry No. 22 (the "Joint Status Report") ¶ 1; see also Notice of Dispute at 3, 21, 43, 46, 51, and 78 (referring to each as a "Technical Dispute").) In

connection with the P3A Disputes, P3A demanded the "immediate commencement" of dispute resolution procedures. (Notice of Dispute at 3.) Moreover, P3A indicated that, should LUMA fail to "cure each breach during the Article 15 process," P3A "stands ready" to exercise the remedy of early termination of the T&D OMA.[9] (Notice of Dispute at 81.)

The six P3A Disputes, each of which concerns LUMA's alleged failure to comply with its contractual obligations under the T&D OMA, are as follows:

(1) <u>Federal Funding</u> – P3A alleges that LUMA has failed to comply with federal funding obligations, failed to provide required documentation for federally funded projects, and exhibited "systemic deficiencies" in cash flow reporting, reconciliation of federal expenditures, and timely requests for reimbursement. (Notice of Dispute at 3-21; Compl. ¶ 42.)

(2) <u>Compensation & Budgets: Service Account Funding</u> – P3A alleges that LUMA failed to generate sufficient revenues, timely obtain reimbursement for federally funded projects, and manage service account funding, culminating in a liquidity crisis for PREPA. (Notice of Dispute at 21-43; Compl. ¶ 42.)

(3) <u>Performance of O&M Services: April 16, 2025 Blackout</u> – P3A alleges that LUMA failed to comply with its contractual obligations following the island-wide blackout on April 16, 2025. (Notice of Dispute at 43-46; Compl. ¶ 42.) The Complaint further indicates that P3A also implies that LUMA has failed to meet certain reporting requirements under the T&D OMA and alleges that LUMA has failed to manage vegetation. (Compl. ¶ 42.)

(4) <u>Performance of O&M Services: Vegetation Management, Transmission Lines, and Public Lighting</u> – P3A alleges that LUMA failed to appropriately manage vegetation, address certain high voltage lines, inspect certain assets in advance of hurricane season, and adequately maintain and plan for public lighting. (Notice of Dispute at 46-51; Compl. ¶ 42.)

(5) <u>Audit and Financial Reporting Obligations</u> – P3A alleges that LUMA failed to provide accurate and timely financial data in violation of its audit and financial reporting obligations. (Notice of Dispute at 51-78; Compl. ¶ 42.)

(6) <u>Collection of Pole Attachment Fees</u> – P3A alleges that LUMA's failure to collect pole attachment fees owed by third-party telecommunications and cable entities constitutes a

---

[9]    In certain instances, the Notice of Dispute states that PREPA will also pursue remedies under the T&D OMA. (<u>See, e.g.,</u> Notice of Dispute at 3 (noting that, should LUMA fail to remedy the alleged violations, "PREPA and P3A will pursue every remedy the T&D OMA allows").)

251219 MEM ORD RE PROV RELIEF MOT (JURISD)        VERSION DECEMBER 19, 2025        8

Add.8

violation of its "core" billing and collection obligations under the T&D OMA.  (Notice of Dispute at 78-81; Compl. ¶ 42.)

In a letter dated July 25, 2025, LUMA disagreed with P3A's allegations and, notably, its characterization of the P3A Disputes as being "Technical Disputes" subject to Expert Technical Determination under the T&D OMA (the "Threshold Dispute").  (Compl. ¶ 43.) Rather, LUMA maintains that the P3A Disputes are non-technical "Disputes" subject to mediation and, to the extent applicable, litigation under sections 15.5 and 15.6 of the T&D OMA, respectively.  (Compl. ¶¶ 43-44.)  LUMA characterized its July 25, 2025 letter as its own notice of dispute with respect to the Threshold Dispute.  (See Joint Status Report ¶ 2 (stating that the July letter noted the existence of the Threshold Dispute).)

In accordance with section 15.3 of the T&D OMA, the Parties' designated representatives met and discussed the Threshold Dispute as well as the "substance of Defendants' allegations."  (Compl. ¶ 46; Joint Status Report ¶ 3.)  No resolution was reached, and LUMA subsequently demanded mediation with respect to the Threshold Dispute in accordance with section 15.5 of the T&D OMA; P3A declined to participate.  (Compl. ¶¶ 46, 48-49; Joint Status Report ¶ 3.)  Instead, P3A indicated an intent to proceed with the dispute resolution procedures set forth in section 15.4 for "Technical Disputes" with respect to the P3A Disputes, notwithstanding the Threshold Dispute.  (Compl. ¶ 49; Joint Status Report ¶ 3.)  The Parties' inability to reach a resolution with respect to the Threshold Dispute gave rise to the present Adversary Proceeding.[10]

---

[10]    The Parties also separately met and conferred with respect to the issues presented in the Motion and were unable to reach resolution.  (See Joint Status Report ¶ 7.)

4. The Adversary Proceeding and the Motion

On August 25, 2025, LUMA commenced the Adversary Proceeding, which asserts three causes of action against Defendants:

- The first cause of action ("Count I") asserts a claim for breach of contract based on Defendants' failure to participate in mediation, allegedly in violation of the terms of Article 15 of the T&D OMA, that allegedly has or will result in damages to LUMA. (Compl. ¶¶ 52-60.)

- The second cause of action ("Count II") seeks a declaratory judgment that the Threshold Dispute is subject to the dispute resolution procedures set forth in sections 15.5 and 15.6 of the T&D OMA and that the T&D OMA is a "valid and binding contract." (Compl. ¶¶ 61-66.)

- The third cause of action ("Count III") seeks a declaratory judgment that the P3A Disputes are non-technical "Disputes" subject only to the dispute resolution procedures set forth in sections 15.5 and 15.6 of the T&D OMA and, again, that the T&D OMA is a "valid and binding contract." (Compl. ¶¶ 67-76.)

In connection with the foregoing, LUMA seeks (i) judgment in its favor on each of its claims, including the relief sought in Count II; (ii) an order directing the Parties to mediate the Threshold Dispute; (iii) injunctive relief to prohibit Defendants from invoking the "Technical Dispute" resolution process set forth in section 15.4 of the T&D OMA with respect to the P3A Disputes until the Threshold Dispute is resolved; (iv) the relief sought in Count III if mediation of the Threshold Dispute proves "unsuccessful or [is] deemed to be futile"; and (v) an award of damages for legal fees and expenses incurred in connection with the Adversary Proceeding. (Compl. at 23.)

Subsequent to the commencement of the Adversary Proceeding, LUMA filed the Motion, which requests that the Court (i) enjoin Defendants from initiating or continuing the dispute resolution procedures set forth in Article 15 with respect to the P3A Disputes until resolution of the Threshold Dispute, and (ii) require Defendants to mediate the Threshold Dispute pursuant to section 15.5 of the T&D OMA. (Mot. at 4, 16-17.)

On September 3, 2025, in light of P3A's expressed willingness, the Court stayed the "Technical Dispute" resolution process of the P3A Disputes pending resolution of any opposition to the Court's jurisdiction.  (See Scheduling Order at 2.)  P3A, through its agent AAFAF, then filed the P3A Jurisdictional Opposition.

DISCUSSION

P3A moves for dismissal of the Complaint and denial of the Motion on grounds that the Court lacks subject matter jurisdiction and that P3A is an indispensable party entitled to sovereign immunity under the Eleventh Amendment, rendering it immune from suit in federal court.  (P3A Jurisdictional Opp. at 1, 3-4, 21.)  To the extent the Court determines that it has jurisdiction, P3A further maintains that the Court should abstain from exercising such jurisdiction, arguing that section 306(b) of PROMESA does not preclude abstention.  (P3A Jurisdictional Opp. at 2; P3A Surreply at 3 n.6.)

LUMA and the Oversight Board contend otherwise, maintaining that the Court possesses both original subject matter jurisdiction under section 306(a)(2) of PROMESA and exclusive jurisdiction under section 306(b) of PROMESA.  (See Motion at 10-12 (contending that the Court has "related to" jurisdiction to decide the Threshold Dispute); LUMA Reply at 6-15 (arguing that "arising in" and "related to" jurisdiction under section 306(a)(2) and exclusive jurisdiction under section 306(b) of PROMESA are all present); FOMB Reply ¶¶ 21, 25 (contending that the Court possesses both "related to" and exclusive jurisdiction under sections 306(a)(2) and 306(b) of PROMESA, respectively).)  In addition, LUMA and the Oversight Board further argue that P3A lacks sovereign immunity and that abstention is not warranted here. (LUMA Reply at 15, 24-25; FOMB Reply ¶¶ 32-36.)

1. <u>The Oversight Board Has Authority to Conduct This Litigation on PREPA's Behalf</u>

As an initial matter, P3A and the Oversight Board disagree over which entity is the proper representative of PREPA in this Adversary Proceeding. While P3A acknowledges that the Oversight Board has a right to be heard with respect to the Motion, it asserts that, pursuant to the terms of the T&D OMA, it is the party that is authorized to speak on behalf of PREPA. (See P3A Jurisdictional Opp. at 1 n.2 (contending that P3A has a "contractual right to defend suits against PREPA" and submitting that it "speaks on behalf of PREPA"); P3A Surreply ¶ 4 (stating that PREPA "designated P3A to act and speak on its behalf with respect to matters relating to the T&D OMA, and the FOMB acceded to that delegation").) The Oversight Board disagrees, arguing instead that, pursuant to section 315(b) of PROMESA, it is PREPA's sole representative for these purposes and P3A lacks authority to represent PREPA in these proceedings. (FOMB Reply at 1 n.1.) For the reasons discussed below, the Court finds that the language of the T&D OMA does not preclude the Oversight Board from acting on behalf of PREPA in this Adversary Proceeding.

Section 315(b) of PROMESA, which pertains to the role and capacity of the Oversight Board, provides that "[t]he Oversight Board in a case under [Title III] is the representative of the debtor." 48 U.S.C.A. § 2175(b) (Westlaw through P.L. 119-57); see <u>Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC</u>, 590 U.S. 448, 466 (2020) (indicating that the Oversight Board may take related and necessary actions on behalf of, and serves as the representative of, Puerto Rico or its instrumentalities in bankruptcy proceedings before the U.S. District Court for Puerto Rico). Accordingly, under PROMESA, the Oversight Board "act[s] as the sole statutory representative of a territory and each of its covered territorial instrumentalities

251219 M<small>EM</small> O<small>RD RE</small> P<small>ROV</small> R<small>ELIEF</small> M<small>OT</small> (J<small>URISD</small>)        V<small>ERSION</small> D<small>ECEMBER</small> 19, 2025        12

Add.12

in their Title III cases."  In re Fin. Oversight & Mgmt. Bd. for P.R., 432 F. Supp. 3d 25, 29 (D.P.R.), aff'd, 954 F.3d 1 (1st Cir. 2020) (citations omitted).

P3A rests its position with respect to representation in this proceeding on provisions of the T&D OMA, which the Oversight Board approved, under which PREPA assigns and delegates to P3A "rights and responsibilities under [the T&D OMA]" and grants P3A the ability to issue approvals or consents binding on PREPA where PREPA's approval or consent to a LUMA submission, request, or report is required under the agreement.  (P3A Surreply ¶ 3 (citing T&D OMA §§ 6.1(b) & 6.2(c)).)  P3A also notes its contractually-conferred ability to bind PREPA in connection with any matter contemplated under the Puerto Rico Transmission and Distribution System Supplemental Terms Agreement, dated June 22, 2020 (the "T&D Supplemental Agreement").  (P3A Surreply ¶ 4 (citing T&D Supp. Agreement § 8.1(a)).)  P3A asserts that that these provisions grant it a "contractual right to defend suits against PREPA" and to serve as PREPA's "voice on matters involving LUMA and the T&D OMA," all of which P3A argues the Oversight Board "acceded to" by consenting to the OMA.  (P3A Jurisdictional Opp. at 1 n.2; P3A Surreply ¶¶ 3-5.)

The T&D OMA's assignment and delegation provisions, however, are limited to those rights and responsibilities "necessary for [P3A] to administer [the T&D OMA] and act as [PREPA's] liaison with [LUMA] in connection with the O&M Services."  (T&D OMA § 6.1(b).)  Under the T&D OMA, P3A is tasked with "overseeing . . . [LUMA's] performance of the O&M Services under [the T&D OMA]."[11]  (T&D OMA § 6.2(a).)  "Without limiting the generality of

---

[11]   The term "O&M Services" is defined in the T&D OMA to comprise the "management, operation, maintenance, repair, restoration and replacement and other related services for the T&D System, in each case that are customary and appropriate for a utility transmission and distribution system service provider."  (T&D OMA § 5.1.)

the foregoing," section 6.2(a) sets forth a list of rights and responsibilities of P3A "with respect to the operation, management and maintenance of the T&D System."  (T&D OMA § 6.2(a).) While the list is not exhaustive, none of the enumerated rights and responsibilities of P3A suggests authority to represent PREPA in lawsuits.  (See T&D OMA § 6.2(a).)  Indeed, as noted above, P3A concedes that the Oversight Board has a "right to be heard on the Motion under PROMESA."  (P3A Jurisdictional Opp. at 1 n.2.)

Commonwealth law governs interpretation of the T&D OMA.  (See T&D OMA § 20.15 (providing that the T&D OMA is to be interpreted, construed, and governed by Commonwealth law "except where the federal supremacy clause requires otherwise"); see also T&D Supp. Agreement § 10.4 (incorporating section 20.15 of the T&D OMA by reference mutatis mutandis).)  Under Puerto Rico law, "[h]owever general the terms of the contract may be, there should not be understood as included therein things and cases different from those with regard to which the persons interested intended to contract."  31 L.P.R.A. § 3473.  Moreover, "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed."  31 L.P.R.A. § 3471.  Given the gravity and breadth of the Oversight Board's statutory authority as sole representative of the Title III debtor in restructuring proceedings that were in progress at the time the Parties entered into the T&D OMA, neither the clear terms of the T&D OMA nor anything in the context of the transaction supports P3A's contention that the Oversight Board ceded its authority to act as PREPA's sole representative in litigation matters concerning LUMA.  See, e.g., Porto Rico Iron Works, Inc. v. Union De Empleados De Oficina De Puerto Rico Iron Works, Inc., No. 74-1306, 1977 WL 1752, at *2 (D.P.R. Sept. 14, 1977) (declining to "presume[]" the retroactivity of certain clauses in a collective bargaining agreement in accordance with 31 L.P.R.A. §§ 3471 and

3473 given the absence of "expressed indicators or obscure language" suggesting otherwise).

Thus, the Court concludes that the Oversight Board, rather than P3A, is the entity properly

authorized to conduct this litigation on PREPA's behalf.

> 2. The Court Has Subject Matter Jurisdiction Pursuant to Section 306(a)(2) of PROMESA

The Complaint alleges that the Court has subject matter jurisdiction pursuant to

28 U.S.C. § 1331 and 48 U.S.C. § 2166 because the Adversary Proceeding is a "civil proceeding

arising in or related to cases under PROMESA."[12]  (Compl. ¶ 10.)  "Related to" jurisdiction

exists, the Complaint contends, because the Adversary Proceeding "will have an effect on the

administration of the bankruptcy estate." (Compl. ¶ 10; see also id. ¶¶ 11-13 (noting that the

T&D OMA is "integral to PREPA's restructuring," the P3A Disputes will impact PREPA's

assets, and resolution of the Threshold Dispute necessarily pertains to the administration of the

estate).)  For the reasons discussed below, the Court finds that "related to" jurisdiction exists.

Section 306(a)(2) of PROMESA provides that district courts shall have "original

but not exclusive jurisdiction of all civil proceedings arising under [Title III], or arising in or

related to cases under [Title III]."  48 U.S.C.A. § 2166(a)(2) (Westlaw through P.L. 119-57).  In

interpreting the jurisdictional bounds of section 306(a)(2), case law applying the analogous

bankruptcy jurisdiction statute, 28 U.S.C. § 1334(b), has offered instructive guidance.  In re Fin.

Oversight & Mgmt. Bd. for P.R., 709 F. Supp. 3d 52, 63 (D.P.R. 2023); see also Fin. Oversight

---

[12]     Section 305 of PROMESA provides, in relevant part, that "unless the Oversight Board consents . . . the court may not, by any stay, order, or decree, in the case or otherwise, interfere with . . . the use or enjoyment by the debtor of any income-producing property." 48 U.S.C.A. § 2165 (Westlaw through P.L. 119-57).  The Oversight Board indicates that, while it does not take a position on whether section 305 of PROMESA applies, the Oversight Board consents to the Court presiding over the Adversary Proceeding to the extent the provision is deemed applicable.  (FOMB Reply at 15 n.10.)

& Mgmt. Bd. for P.R. v. Hernández-Montañez (In re Fin. Oversight & Mgmt. Bd. for P.R.), 77 F.4th 49, 61 (1st Cir. 2023) ("Hernández-Montañez") (noting that, although a "rigid[] import" of title 11 jurisdiction tests should be avoided, "general principles from . . . title 11 case law are instructive").

Accordingly, a proceeding "arises under" Title III when the "cause of action is created by Title III." In re Fin. Oversight & Mgmt. Bd. for P.R., 709 F. Supp. 3d at 63 (citing New England Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 68 (1st Cir. 2002)); see Hernández-Montañez, 77 F.4th at 60 (finding that "arising under" jurisdiction was not at issue because it was undisputed that Title I and Title II of PROMESA created the cause of action as opposed to Title III). Meanwhile, a proceeding "arises in" a Title III case where such a proceeding would have "no existence outside of the bankruptcy." Gupta v. Quincy Med. Ctr., 858 F.3d 657, 664-65 (1st Cir. 2017) (quoting Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)). In determining whether "arising in" jurisdiction exists, "the fundamental question is whether the proceeding by its nature, not its particular factual circumstance, could arise only in the context of a bankruptcy case" as opposed to any reliance on a "but for" test. Fin. Oversight & Mgmt. Bd. for P.R. v. Pierluisi Urrutia (In re Fin. Oversight & Mgmt. Bd. for P.R.), 650 B.R. 334, 348-49 (D.P.R.) ("Pierluisi Urrutia") (quoting Gupta, 858 F.3d at 664-65), aff'd, 77 F.4th 49 (1st Cir. 2023).

Finally, a proceeding is "related to" a Title III case when the proceeding "potentially [has] some effect on the bankruptcy estate, such as altering [a] debtor's rights, liabilities, options, or freedom of action, or otherwise [has] an impact upon the handling and administration of the bankrupt estate." In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68 (quoting Smith v. Com. Banking Corp. (In re Smith), 866 F.2d 576, 580 (3d Cir. 1989));

see Torres Cruz v. LUMA Energy, LLC (In re Fin. Oversight & Mgmt. Bd. for P.R.), 631 B.R. 607, 610 (D.P.R. 2021) ("Torres Cruz") (stating that "related to" jurisdiction exists when the outcome of a proceeding "could conceivably have any effect on the estate" (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984))).  "[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of the provision."  Id. (alteration in original) (quotation marks omitted) (quoting Pacor, 743 F.2d at 994).

Here, there is no "arising under" jurisdiction because the causes of action asserted in the Complaint arise solely in connection with the T&D OMA and its interpretation under Commonwealth law and were not created by Title III.  (See Complaint ¶ 1 (stating that LUMA "brings this action because the Parties disagree on the proper interpretation of certain dispute-resolution provisions in the [T&D OMA]" and "disagree on how to properly resolve that disagreement"); Complaint ¶¶ 52-76 (asserting one cause of action for breach of Article 15 of the T&D OMA and two causes of action for declaratory judgment concerning the construction of Article 15 with respect to the Threshold Dispute and P3A Disputes); T&D OMA § 20.15 (providing that Commonwealth law governs the T&D OMA "except where the federal supremacy clause requires otherwise").)  LUMA and the Oversight Board do not dispute this. (See LUMA Reply at 5-15 (contesting that it concedes the Court's lack of "arising under" jurisdiction and only setting forth arguments that the Court has "arising in" and "related to" jurisdiction); FOMB Reply ¶¶ 25-31 (arguing only that "related to" jurisdiction is present).)

For similar reasons, there is also no "arising in" jurisdiction because the disputes underlying the Complaint may exist outside of bankruptcy.[13]  As noted, each of LUMA and the Oversight Board concede that the Complaint and the underlying disputes are merely matters of contract interpretation and Commonwealth law.  (See LUMA Reply at 31 (stating that "[t]here is no dispute that the issues raised in LUMA's complaint are matters of contract interpretation governed by Commonwealth law"); FOMB Reply ¶ 42 (acknowledging that the Adversary Proceeding involves "interpretation of the T&D OMA under Puerto Rico contract law" and, in essence, "straightforward contract claims").)  Indeed, such claims could have arisen irrespective of whether a Title III case exists.  (See LUMA Reply at 3-4 (stating that the T&D OMA was a contract "with a 15-year minimum term that was designed to start after PREPA exited Title III" with provisions drafted in contemplation of "resolving disputes after PREPA's restructuring was complete" (emphasis added)).)

As for "related to" jurisdiction, the Court concludes that such jurisdiction exists with respect to the Adversary Proceeding.  The Court previously held that PREPA's contractual rights in the T&D OMA are "among the property interests protected by section 362(a)(3) of the Bankruptcy Code" such that actions seeking to exercise control over it would violate the

---

[13]   LUMA contends that "arising in" jurisdiction is present because the Adversary Proceeding pertains to a PREPA postpetition contract that is critical to its restructuring efforts, rendering it a "core" proceeding pursuant to 28 U.S.C. § 157(b).  (LUMA Reply at 6-7, 9; see also FOMB Reply ¶ 43 (stating that, to the extent the Court determines the Adversary Proceeding is "core," it would, by analogy to 28 U.S.C. § 157(b), be a proceeding that that "arises under" or "arises in" Title III).)  PROMESA, however, neither incorporates 28 U.S.C. § 157 nor explicitly provides for any "core" versus "non-core" distinction in determining the scope of the Court's subject matter jurisdiction.  (See FOMB Reply at 19 n.13 (acknowledging that 28 U.S.C. § 157(b) "only applies in matters under title 11" and "has no direct application to this proceeding").)  Thus, the Court need not address LUMA's argument at this time.

automatic stay. Senate of P.R. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.), No. 17 BK 3283-LTS, 2022 WL 17413011, at *3 (D.P.R. Feb. 7, 2022). In this instance, the outcome of the Adversary Proceeding will require interpretation of the T&D OMA's terms and a determination of the proper dispute resolution path to address the Threshold Dispute and the P3A Disputes. Resolution will necessarily touch upon PREPA's contractual rights under the T&D OMA, which is property of PREPA. See Voya Institutional Tr. Co. v. Univ. of Puerto Rico, 266 F. Supp. 3d 590, 599 (D.P.R. 2017) (concluding that "related to" jurisdiction exists because the outcome of the litigation "may ultimately have an effect on the assets that form part of the Commonwealth's Title III estate"); cf. Pelletier v. Yellow Transp., Inc., 549 F.3d 578, 581 (1st Cir. 2008) (noting that "a contractual clause selecting either a judicial or an arbitral forum for the resolution of disputes establishes a legal right which is analytically distinct from the rights being asserted in the dispute to which it is addressed" (quoting Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 195 (3d Cir.1983))).

In addition, matters pertaining to liability and value in PREPA's unresolved Title III case have the potential to affect the administration of PREPA's Title III estate. Here, the T&D OMA was established to administer PREPA's operations as part of an effort to "transform Puerto Rico's energy system into a modern, sustainable, reliable, efficient, cost-effective and resilient system." (T&D OMA at 1.) Disputes over the validity of and performance under the T&D OMA then, an agreement that concerns the operation and management of substantial revenue-generating assets, affects PREPA's Title III case in a manner sufficient to establish "related to" jurisdiction. See Work/Family Directions, Inc. v. Children's Discovery Ctrs., Inc. (In re Santa Clara Cnty. Child Care Consortium), 223 B.R. 40, 45 (B.A.P. 1st Cir. 1998) ("There must be some nexus between the 'related proceeding' and the title 11 case for the bankruptcy

court to have subject matter jurisdiction."); Hernández-Montañez, 77 F.4th at 60 ("We have

observed that '[a]lthough 'related to' jurisdiction 'cannot be limitless,' it is nonetheless 'quite

broad.'" (alteration in original) (quoting Gupta, 858 F.3d at 663)).

Accordingly, the Court concludes that "related to" jurisdiction exists and that it

has subject matter jurisdiction pursuant to section 306(a)(2) of PROMESA.

### 3.   Abstention is Nonetheless Appropriate

While the Court has subject matter jurisdiction of the Adversary Proceeding, it

finds that it is nonetheless appropriate to decline to exercise this jurisdiction pursuant to section

309 of PROMESA.[14]  Section 309 of PROMESA provides that "[n]othing in [Title III] prevents

a district court in the interests of justice from abstaining from hearing a particular proceeding

arising in or related to a case under [Title III]."  48 U.S.C.A. § 2169 (Westlaw through P.L. 119-

57).  The language of section 309 of PROMESA "mirrors the language in 28 U.S.C.

§ 1334(c)(1)" such that case law applying 28 U.S.C. § 1334(c)(1) may be "instructive for this

Court."  Asociación de Salud Primaria, 330 F. Supp. 3d at 682.

---

[14]   LUMA and the Oversight Board also contend that the Court also has jurisdiction of the
T&D OMA pursuant to section 306(b) of PROMESA, which confers upon the Court
"exclusive jurisdiction of all property, wherever located, of the debtor as of the
commencement of the case."  48 U.S.C.A. § 2166(b) (Westlaw through P.L. 119-57).
Section 306(b) does not, however, preclude abstention with respect to contract disputes.
See Asociación de Salud Primaria de P.R., Inc. v. Puerto Rico (In re Fin. Oversight &
Mgmt. Bd. for P.R.), 330 F. Supp. 3d 667, 674 (D.P.R. 2018) ("Asociación de Salud
Primaria") (stating that the "Court's exclusive jurisdiction over the property of the
Commonwealth as a Title III debtor" would not be "preclusive of remand or abstention");
Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin.
Oversight & Mgmt. Bd. for P.R.), 899 F.3d 13, 22 (1st Cir. 2018) (finding that section
306(b)'s conferral of exclusive jurisdiction does not prevent the Court from lifting the
automatic stay to permit a creditor to seek the appointment of a receiver in another court).

Under 28 U.S.C. § 1334(c)(1), "[c]ourts have broad discretion to abstain from hearing a case." Id. at 682 (citing In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 69). In determining whether abstention is appropriate under PROMESA, the Court considers factors bankruptcy courts in Puerto Rico have looked to in deciding whether to abstain under 28 U.S.C. § 1334(c)(1). See id. at 682-83 (drawing from the "conceptually aligned" factors bankruptcy courts in Puerto Rico and district courts look to in deciding whether to abstain and to remand, respectively, in "evaluating abstention under PROMESA"). The twelve factors, none of which is individually dispositive, are the following:

> (1) [T]he effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the unsettled nature of applicable law[;] (4) a related proceeding in state court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court to be enforced in bankruptcy court; (9) the burden on the bankruptcy docket; (10) the likelihood that the bankruptcy court proceeding involves forum shopping by one of the parties; (11) the right to jury trial; and (12) the presence of non-debtor parties.

Id. at 682 (citing LM Waste Serv. Corp. v. Municipio De Juana Diaz (In re LM Waste Serv. Corp.), 562 B.R. 845, 851 (Bankr. D.P.R. 2016)). For the reasons explained below, the Court finds that abstention is warranted based on an analysis of the most relevant factors.

First, the Adversary Proceeding, which seeks only a determination of the proper dispute resolution path (i.e., forum) as opposed to the merits of the underlying disputes, does not, as currently framed, appear likely to have a "material effect on the administration (as opposed to the magnitude or composition) of PREPA's Title III estate." Puerto Rico Elec. Power Auth. v. Vitol S.A., Adv. Proc. No. 17-218-LTS, Docket Entry No. 31 at 11-12 (D.P.R. Feb. 12, 2019) (considering the extent to which certain removed proceedings would impact the administration of

PREPA's Title III case). LUMA appears to acknowledge this, pointing the finger at P3A for preventing it from "presenting, in this forum, disputes that will have a profound effect on PREPA's restructuring" and stating that it will amend the Complaint to bring the "underlying disputes to this Court" if mediation proves unsuccessful. (LUMA Reply at 11-12.) LUMA argues only that proceeding in the incorrect forum could potentially remove the Court's ability to have insight or control with respect to a "key component of PREPA's restructuring." (LUMA Reply at 26.) However, that possibility alone is insufficient to establish that the forum will be significant to the administration of PREPA's Title III case. See Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co., Inc., No. CIV.A. 10-11376-NMG, 2010 WL 6580503, at *7 (D. Mass. Dec. 28, 2010) (noting that, although a "judgment against the debtor would impact the bankruptcy estate . . . , that impact is not affected by the choice of forum"), report and recommendation adopted, 813 F. Supp. 2d 242 (D. Mass. 2011).

Second, the Adversary Proceeding, which merely requires interpretation of the T&D OMA under Commonwealth law, neither requires interpretation of PROMESA nor directly relates to the restructuring process. Rather, state law issues predominate, which neither LUMA nor the Oversight Board dispute, and pertain to the postpetition conduct and alleged omissions of LUMA as opposed to the restructuring and treatment of PREPA's obligations. See Herrero Domenech v. LUMA Energy, LLC, Adv. Proc. No. 22-50, Docket Entry No. 16 at 17 (D.P.R. Oct. 28, 2022) (noting that "[t]he central focus of PREPA's Title III case is the restructuring and treatment of PREPA's pre-petition obligations"), report and recommendation adopted, Adv. Proc. No. 22-50, Docket Entry No. 27 (D.P.R. Jan. 18, 2023). Both LUMA and the Oversight Board contend that, to the extent the P3A Disputes at issue in the Complaint and Motion constitute the first step in P3A's plan to terminate the T&D OMA, PREPA's Title III could be

profoundly affected.  (See LUMA Reply at 1-2; FOMB Reply ¶¶ 39, 44; *Motion of LUMA Energy, LLC and LUMA Servco, LLC for Leave to Supplement Reply to Puerto Rico Public-Private Partnerships Authority's Jurisdictional Opposition with Additional Exhibit*, Docket Entry No. 58 ¶ 5.)  Termination of the T&D OMA, however, is not presently before the Court in this Adversary Proceeding and, while a possibility, is too attenuated to foreclose abstention at this time with respect to a dispute as to the interpretation of the contract.  "Where issues are far removed or peripheral, and do not involve issues central to the restructuring, abstention is warranted in bankruptcy cases."  Asociación de Salud Primaria, 330 F. Supp. 3d at 683 (citation omitted).

Third, there is support for the notion that LUMA may be forum shopping.  Section 15.6 of the T&D OMA, which pertains to litigation under the T&D OMA with respect to non-technical Disputes where mediation has proved unsuccessful, provides, in relevant part, that:

> [E]ither Party may initiate a civil action in the Commonwealth Court and in accordance with all applicable rules of civil procedure.  The Parties acknowledge and understand that, to resolve any and all claims arising out of this Agreement (other than any Technical Dispute), they may file a civil action, including actions in equity, in the Commonwealth Court.

(T&D OMA § 15.6(a).)  Moreover, both PREPA and LUMA have each irrevocably consented to the "exclusive jurisdiction of such courts in any such actions or proceedings" and "waive[d] any objection . . . to the jurisdiction of any such action or proceeding, as well as objections or defenses based on sovereign immunity."[15]  (T&D OMA § 15.6(a).)  Each of the Parties has also agreed that "the terms and conditions of [the T&D OMA] have been freely, fairly and thoroughly

---

[15]    To the extent there is any ambiguity to the antecedent reference, the Court finds that the "Commonwealth Court" is at least one of "such courts" and the only court PREPA and LUMA have explicitly consented to jurisdiction of civil actions filed there.

negotiated." (T&D OMA § 15.6(a).) In connection with provisional relief specifically, section 15.8 of the T&D OMA further provides that "[n]otwithstanding any other provision in [the T&D OMA], no Party shall be precluded from initiating a proceeding in the Commonwealth Court for the purpose of obtaining any emergency or provisional remedy to protect its rights that may be necessary and that is not otherwise available under [the T&D OMA]." (T&D OMA § 15.8.) To the extent LUMA is seeking to avoid such provisions of the T&D OMA, which the Parties consented to, this too weighs in favor of abstention. See Asociación de Salud Primaria, 330 F. Supp. 3d at 684 (finding that the forum shopping factor "weighs heavily" in favor of abstaining to the extent plaintiffs removed claims "simply in order to progress in another forum").

Fourth, "avoidance of unnecessary burden [also] weighs in favor of abstention." Id. In this instance, failing to abstain from exercising jurisdiction over a purely state law contract dispute that involves non-debtor parties, LUMA and P3A, with no direct impact on PREPA's Title III case at this time would only add burden on the Court's docket.

Finally, LUMA argues that abstention is not warranted due to the lack of a pending state proceeding. (See LUMA Reply at 30-31.) However, as already noted, no single factor is dispositive, and as the "sole factor weighing against abstention . . . [such factor] barely moves the scale overwhelmingly tipped in favor of abstention." Scully v. Danzig (In re Valley Food Servs., LLC), 400 B.R. 724, 732 (D. Me. 2008); see also Flores Rivera v. Telemundo Grp., 133 B.R. 674, 677 (D.P.R. 1991) (considering the lack of a parallel state action as only one of several factors weighing in favor of the court declining to abstain).

Accordingly, for the reasons discussed above, the Court declines pursuant to section 309 of PROMESA to exercise its subject matter jurisdiction.

CONCLUSION

For the foregoing reasons, the Complaint is dismissed in its entirety as to all Defendants, without prejudice to litigation in the Commonwealth Court, and the Motion is denied as moot.  In light of the dismissal of the Complaint, the Court deems it unnecessary to address the remaining arguments raised, including whether P3A is an indispensable party entitled to sovereign immunity.  This Memorandum Order resolves Docket Entry No. 28.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

Dated: December 19, 2025

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In Re:<br><br>The Financial Oversight and Management Board for Puerto Rico<br><br>as representative of<br><br>The Commonwealth of Puerto Rico, <u>et al</u>.,<br><br>Debtors, | 3:17-BK-3283 (LTS)<br><br>PROMESA Title III<br><br>(Jointly Administered) |
| In Re:<br><br>The Financial Oversight and Management Board for Puerto Rico<br><br>as representative of<br><br>Puerto Rico Electric Power Authority,<br><br>Debtor, | 3:17-BK-4780 (LTS) |
| LUMA Energy, LLC and LUMA Energy Servco, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Puerto Rico Electric Power Authority and Puerto Rico Public-Private Partnerships Authority,<br><br>Defendants. | Adversary Proceeding No. 3:25-00043 (LTS)<br><br>in 3:17-BK-4780 (LTS) |

Add.26

25-00043-LTS
LUMA Energy, LLC, et al. v. Puerto Rico Electric Power Authority, et al.
Judgment

## JUDGMENT

Pursuant to the "MEMORANDUM ORDER DISMISSING ADVERSARY PROCEEDING AND DENYING MOTION FOR PROVISIONAL RELIEF", filed on December 19, 2025 (Docket Entry #65), the above captioned adversary proceeding is now closed.

SO ORDERED.

In San Juan, Puerto Rico, this 19th day of December 2025.

Ada I. García Rivera, Esq., CPA
Clerk of Court

By: s/Carmen Tacoronte
Carmen Tacoronte
Deputy Clerk

Page **2** of **2**

Add.27

United States Code Annotated
  Title 48. Territories and Insular Possessions
    Chapter 20. Puerto Rico Oversight, Management, and Economic Stability
      Subchapter III. Adjustments of Debts

48 U.S.C.A. § 2169

§ 2169. Abstention

Effective: June 30, 2016
Currentness

Nothing in this subchapter prevents a district court in the interests of justice from abstaining from hearing a particular proceeding arising in or related to a case under this subchapter.

**CREDIT(S)**

(Pub.L. 114-187, Title III, § 309, June 30, 2016, 130 Stat. 583.)

Notes of Decisions (2)

48 U.S.C.A. § 2169, 48 USCA § 2169
Current through P.L. 119-84. Some statute sections may be more current, see credits for details.

**End of Document**                                          © 2026 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part IV. Jurisdiction and Venue (Refs & Annos)
Chapter 85. District Courts; Jurisdiction (Refs & Annos)

28 U.S.C.A. § 1334

§ 1334. Bankruptcy cases and proceedings

Effective: October 17, 2005
Currentness

**(a)** Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

**(b)** Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

**(c)(1)** Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

**(2)** Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

**(d)** Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. Subsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

**(e)** The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction--

**(1)** of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

**(2)** over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 931; Pub.L. 95-598, Title II, § 238(a), Nov. 6, 1978, 92 Stat. 2667; Pub.L. 98-353, Title I, § 101(a), July 10, 1984, 98 Stat. 333; Pub.L. 99-554, Title I, § 144(e), Oct. 27, 1986, 100 Stat. 3096; Pub.L. 101-650, Title III, § 309(b), Dec. 1, 1990, 104 Stat. 5113; Pub.L. 103-394, Title I, § 104(b), Oct. 22, 1994, 108 Stat. 4109; Pub.L. 109-8, Title III, § 324(a), Title VIII, § 802(c)(2), Title XII, § 1219, Apr. 20, 2005, 119 Stat. 98, 145, 195.)

Notes of Decisions (1682)

28 U.S.C.A. § 1334, 28 USCA § 1334
Current through P.L. 119-84. Some statute sections may be more current, see credits for details.

**End of Document**                                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.                                    2